### Alexandria

COMMONWEALTH OF VIRGINIA,
DEPARTMENT OF STATE POLICE

v.

DANNY LEE HAGA

No. 0748-93-4

Decided April 5, 1994

COUNSEL

Lee Melchor, Assistant Attorney General (Stephen D. Rosenthal, Attorney General; Gail Starling Marshall, Deputy Attorney General; William H. Hauser, Senior Assistant Attorney General, on brief), for appellant.

Michael A. Kernbach (Cohen, Dunn & Sinclair, P.C., on brief), for appellee.

OPINION

**WILLIS, J.**—On appeal from an award by the Virginia Workers' Compensation Commission granting Danny Lee Haga compensation, the Virginia Department of State Police (VDSP) contends that the commission erred (1) in holding that a coronary artery spasm triggers the statutory presumption set forth in Code § 65.2-402(B), (2) in defining heart disease to include coronary artery spasm, and (3) in failing to find that factors unrelated to Haga's employment caused his condition. Haga seeks an award of costs and attorney's fees, contending that the issues on appeal have been well settled both in law and in fact. We hold that Haga's coronary artery spasm falls within the definition of heart disease, triggering the presumption of Code § 65.2-402(B), and that VDSP failed to rebut that presumption. However, we decline to award Haga costs and attorney's fees.

On August 19, 1991, Haga was employed as a trooper by VDSP. He was thus a member of the State Police Officers' Retirement System. He worked that day from 7:00 a.m. until 3:00 p.m. At 6:15 p.m., he suffered severe chest pain while running bases in a softball game that was unrelated to his employment. Haga's treating physician, Dr. Daniel M. Camden, diagnosed a "coronary artery spasm." Another treating physician, Dr. Phillip Bushkar,

diagnosed possible coronary artery spasm and, in his August 22, 1991 discharge summary, noted "chest pain without significant coronary artery disease." A third physician, Dr. Richard A. Schwartz, also diagnosed a coronary artery spasm, which he characterized as a form of heart disease. Haga's disability lasted from August 20, 1991 through September 6, 1991.

Code § 65.2-402(B) provides:

> Hypertension or heart disease causing the death of, or any health condition or impairment resulting in total or partial disability of . . . (ii) members of the State Police Officers' Retirement System . . . shall be presumed to be occupational diseases, suffered in the line of duty, that are covered by this title unless such presumption is overcome by a preponderance of competent evidence to the contrary.

In holding Haga's coronary artery spasm to be heart disease, the commission reiterated and employed its previously determined definition of disease.

> Disease is an impairment of the normal state of the living body or any of its components that interrupts or modifies the vital functions, being a response to environmental factors (as malnutrition, industrial hazards or climate), to specific infective agents (as worms, bacteria or viruses), to inherent defects of the organisms (as various genetic anomalies), or to combinations of these factors.

*Fletcher v. TAD Technical Servs. Corp.*, VWC 150-41-13 (March 12, 1992).

VDSP contends that the record does not support the conclusion that Haga's condition was a heart disease contemplated by Code § 65.2-402(B). It argues that because all three physicians and the medical reports specifically state that Haga suffered from a coronary artery spasm, not heart disease, the commission erred in finding the spasm to be a heart disease. VDSP also contends that the commission's definition of disease is too broad, especially because the two treating physicians did not classify Haga's condition as a disease. Finally, VDSP asserts that a preponderance of competent evidence proved that non-work-related factors caused Haga's heart spasm.

## THE DEFINITION OF DISEASE

We first consider the meaning of the word "disease." In *Merillat Industries, Inc. v. Parks*, 246 Va. 429, 436 S.E.2d 600 (1993), the Supreme Court held that a torn rotator cuff muscle, sustained by a worker because of repetitive motion, was not compensable as an occupational disease. The Court said:

> [T]he categories of compensable injuries created by the legislature—accidental injury and occupational disease—are separate, meaningful categories. "A definiton of either 'injury' or 'disease' that is so broad as to encompass any bodily ailment of whatever origin is too broad because it would make unnecessary and meaningless the two categories specifically set forth in the Act. . . . If this distinction is to be done away with, the legislature must do so."

*Id.* at 433, 436 S.E.2d at 602 (citation omitted). This holding provides no definition of disease. In seeking that definition, we employ well established standards of statutory construction.

> The construction afforded a statute by the public officials charged with its administration and enforcement is entitled to be given [great] weight by a court.

*Watford v. Colonial Williamsburg Found.*, 13 Va. App. 501, 505, 413 S.E.2d 69, 71 (1992).

> The right to compensation under the workmen's compensation law is granted by statute, and in giving the right the legislature had full power to prescribe the time and manner of its exercise. When the legislature has spoken plainly it is not the function of courts to change or amend its enactments under the guise of construing them. The province of construction lies wholly within the domain of ambiguity, and that which is plain needs no interpretation.

*Winston v. City of Richmond*, 196 Va. 403, 407-08, 83 S.E.2d 728, 731 (1954); *Dan River, Inc. v. Atkins*, 3 Va. App. 320, 328, 349 S.E.2d 667, 671 (1986). Our inquiry discloses that the word "disease" has a well-established meaning, and that no significant disparity exists among the definitions of that term promulgated by various authorities.

166

■ *Webster's Ninth New Collegiate Dictionary* (1986) defines disease, in relevant context, as follows:

A condition of the living animal or plant body or of one of its parts that impairs the performance of a vital function: SICK-NESS, MALADY.

*Black's Law Dictionary* 467 (6th ed. 1990) defines disease as follows:

Deviation from the healthy or normal condition of any of the functions or tissues of the body. An alteration in the state of the body or of some of its organs, interrupting or disturbing the performance of the vital functions, and causing or threatening pain and weakness. Illness; sickness; disorder; malady; bodily infirmity. An illness or an abnormal state having a definite pattern of symptoms.

*Dorland's Illustrated Medical Dictionary* (26th ed. 1985) defines disease, in relevant part, as follows:

Any deviation from or interruption of the normal structure or function of any part, organ, or system (or combination thereof) of the body that is manifested by a characteristic set of symptoms and signs and whose etiology, pathology, and prognosis may be known or unknown.

We adopted and employed this definition in *Piedmont Manufacturing Co. v. East*, 17 Va. App. 499, 503, 438 S.E.2d 769, 772 (1993). The definition of disease employed by the commission is consistent with the foregoing definitions and with the definition adopted by us in *Piedmont*.

## SUFFICIENCY OF THE EVIDENCE TO PROVE HEART DISEASE

■ Upon appellate review, the findings of fact made by the Workers' Compensation Commission will be upheld when supported by credible evidence. *James v. Capitol Steel Constr. Co.*, 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989). A coronary artery is a component of the body. Its spasm in this case interrupted and modified its vital function, serving the heart. Furthermore, Dr. Schwartz characterized coronary artery spasm as a form of

heart disease. This evidence supports the commission's finding, as a medical fact, that Haga's coronary artery spasm was heart disease. This finding of fact, which must be accorded deference on appeal, invokes the presumption of Code § 65.2-402(B).

## SUFFICIENCY OF THE EVIDENCE TO REBUT THE PRESUMPTION

■ The commission found that VDSP failed to overcome the presumption of Code § 65.2-402 by a preponderance of competent evidence. Indeed, the commission found that Haga's disease was employment-related. The evidence supports these findings. Dr. Camden identified the factors that could have caused Haga's coronary artery spasm, including the stress of his employment, cigarette smoking, emotional stress, and physical exertion. He could not single out any one factor as the medically probable cause. The mere existence of non-employment-related risk factors is insufficient to rebut the statutory presumption. *See City of Norfolk v. Lillard*, 15 Va. App. 424, 424 S.E.2d 243 (1992). Furthermore, Dr. Schwartz identified work-related stress as the medically probable cause of the spasm.

## ATTORNEY'S FEES AND COSTS

Although we affirm the judgment of the commission, we do not find VDSP's appeal to be frivolous or oppressive. Therefore, we decline to award attorney's fees and costs.

For the foregoing reasons, the judgment of the commission is affirmed.

*Affirmed.*

Moon, C.J., and Fitzpatrick, J., concurred.