461 S.E.2d 431

PERDUE FARMS, INC.

v.

Thea B. McCUTCHAN.

Crystal F. BOWEN

v.

AUTOMOTIVE INDUSTRIES, INC. and
Employers Insurance of Wausau.

Record Nos. 1108–94–3, 1532–94–3.

Court of Appeals of Virginia,
Salem.

Sept. 12, 1995.

Koontz, J., filed dissenting opinion.

Thomas G. Bell, Jr., Staunton (Timberlake, Smith, Thomas & Moses, P.C., on brief), for appellant Perdue Farms, Inc.

Howard A. Herzog, Staunton, for appellee Thea B. McCutchan.

James B. Feinman, Lynchburg (Cary P. Moseley, Charlotte; James B. Feinman & Associates, Lynchburg, on briefs), for appellant Crystal F. Bowen.

Cathleen P. Welsh, Harrisonburg (Wharton, Aldhizer & Weaver, on brief), for appellees Automotive Industries, Inc. and Employers Ins. of Wausau.

. Present: COLEMAN, KOONTZ * and WILLIS, JJ.

WILLIS, Judge.

On appeal from an award of compensation to Thea B. McCutchan, Perdue Farms, Inc. contends that the Workers' Compensation Commission erred (1) in holding that Ms. McCutchan's carpal tunnel syndrome (CTS) is a disease, (2) in holding that Code § 65.2–401 pertaining to ordinary diseases of life does not apply, and (3) in holding that Ms. McCutchan

---

* Justice Koontz participated in the hearing and decision of this case prior to his investiture as a Justice of the Supreme Court of Virginia.

suffered a compensable occupational disease as defined by Code § 65.2–400.

On appeal from a denial of benefits, Crystal F. Bowen contends (1) that the commission erred in finding that she had failed to prove that her carpal tunnel syndrome was a disease compensable under Code § 65.2–400, and (2) that the commission erred in failing to enforce a settlement that she had made with her employer.

Because both cases concern the compensability of CTS as an occupational disease and the application of the injury-disease dichotomy enunciated in *Merillat Industries, Inc. v. Parks*, 246 Va. 429, 436 S.E.2d 600 (1993), we have consolidated them for decision. For the following reasons, we affirm the award of benefits in *McCutchan* and we reverse the denial of benefits in *Bowen*.

I.

In *Merillat*, the Supreme Court held that the Workers' Compensation Act "requires that the condition for which compensation is sought as an occupational disease must first qualify as a disease." *Id.* at 432, 436 S.E.2d at 601.

■ We first consider the meaning of the word "disease." We have defined disease as:

any deviation from or interruption of the normal structure or function of any part, organ, or system (or combination thereof) of the body that is manifested by a characteristic set of symptoms and signs and whose etiology, pathology, and prognosis may be known or unknown.

*Piedmont Mfg. Co. v. East*, 17 Va.App. 499, 503, 438 S.E.2d 769, 772 (1993) (quoting *Sloane–Dorland Ann. Medical–Legal Dictionary* 209 (1987)). This definition agrees with definitions found in *Black's Law Dictionary* and in general dictionaries. *See Commonwealth/Department of State Police v. Haga*, 18 Va.App. 162, 166, 442 S.E.2d 424, 426 (1994). In *Perdue Farms, Inc. v. McCutchan*, the commission cited with approval and employed this definition. When a governmental agency

construes the meaning of a statutory term that lies within its administrative and enforcement authority, that construction is entitled to great weight before a reviewing court. *Haga*, 18 Va.App. at 165, 442 S.E.2d at 425. Thus, we recognize the definition enunciated in *Piedmont* as the general and accepted meaning of the term "disease," a term which is presumed to be known by the legislature and is employed by it without restriction in Code §§ 65.2–400 and 65.2–401.

Carpal Tunnel Syndrome is defined as:

a complex of symptoms resulting from compression of the median nerve in the carpal tunnel, with pain and burning or tingling paresthesias in the fingers and hand, sometimes extending to the elbow.

*Dorland's Illustrated Medical Dictionary* 1289 (26th ed. 1985). This general medical definition places CTS within the definition of disease set forth in *Piedmont* and approved and applied by the commission in *Perdue Farms, Inc. v. McCutchan.*

*Merillat* concerned a torn rotator cuff that was caused by repetitive motion. Because this condition did not result from a single, precipitating event, it was not compensable as an injury by accident. Considering whether the torn rotator cuff was compensable as an occupational disease, the Supreme Court said:

[N]either the Deputy Commissioner, the Commission, nor the Court of Appeals determined whether the tear to Parks's rotator cuff was a disease. Rather, they concluded the tear was a compensable "occupational disease" because Parks established a causal connection between the rotator cuff tear and the work place.... This "causality" analysis standing alone, however, does not comply with the requirements of the Act....

*Merillat*, 246 Va. at 432, 436 S.E.2d at 601. The Court went on to say

We have declined previous invitations to broaden the scope of the Act to include job-related impairments arising from

repetitive motion or cumulative trauma. We based our prior position, in part, on our conclusion that the categories of compensable injuries created by the legislature—accidental injury and occupational disease—are separate, meaningful categories. "A definition of either 'injury' or 'disease' that is so broad as to encompass any bodily ailment of whatever origin is too broad because it would make unnecessary and meaningless the two categories specifically set forth in the Act...." *Holly Farms v. Yancey,* 228 Va. 337, 340–41, 321 S.E.2d 298, 300 (1984).

In *Morris,* we held that gradually incurred traumatic injuries or cumulative trauma conditions were not compensable under the existing injury by accident-occupational disease dichotomy. And we again commented that the "General Assembly, despite repeated invitations to do so, has made no change in the ... rule with respect to injuries gradually incurred, notwithstanding the passage of 47 years." *Morris* [*v. Morris,*] 238 Va. [578] at 586, 385 S.E.2d [858] at 863 [(1989)].

*Id.* at 433, 436 S.E.2d at 601–02.

## II.

The employers argue that, although CTS is a disease within the definition set forth in *Piedmont,* the foregoing passages from *Merillat* deny compensability for any condition, be it injury or disease, that arises from repetitive motion or cumulative trauma. We disagree. We do not read *Merillat* to determine compensability by classifying diseases according to causation. Indeed, *Merillat* expressly rejects a "causality analysis" as the means of identifying occupational diseases. Rather, *Merillat* reaffirms the distinction between trauma and disease and the denial of compensation for injury resulting from cumulative trauma. It requires that to be compensable as an occupational disease, the condition must first be identified as a disease.

Despite the pronouncements of *Yancey, Morris, Merillat, Piedmont,* and *Haga,* the legislature has retained, without restriction, the term, "disease," as a qualification for compen-

sation under the Act. Thus, in enforcing the Act and in maintaining the injury-by-accident/occupational disease dichotomy as required by *Merillat*, we are called upon, with little aid from professional or lay authorities, to construct a distinction between "injury" and "disease." The accepted medical, legal, and lay definitions of disease are so broad as to encompass injury, a breadth forbidden by *Merillat* and *Yancey*. Common experience teaches that many conditions that are classified unquestionably as diseases are, in fact, cumulative traumas by infectious agents. Nonetheless, we believe that within the framework of conventional understanding, a distinction may be drawn between trauma and injury, on the one hand, and disease on the other.

An injury is "an obvious sudden mechanical or structural change in the body." *Chesterfield Co. v. Dunn*, 9 Va.App. 475, 476, 389 S.E.2d 180, 181 (1990). A disease is a condition which may arise from any number of causes, including trauma, that impairs the function of the body or any part thereof. The distinction between injury and disease lies in the "obvious sudden mechanical or structural" aspect of injury. Thus, a torn rotator cuff (*Merillat*) and a back strain (*Yancey*) have been held to be injuries, whereas deQuervain's tenosynovitis (*Piedmont*) and heart disease (*Haga*) have been held to be diseases.

### III.

On appeal, we view the evidence in the light most favorable to the party prevailing below. *Crisp v. Brown's Tysons Corner Dodge, Inc.*, 1 Va.App. 503, 504, 339 S.E.2d 916, 916 (1986). The findings of the commission, if based on credible evidence, are conclusive and binding on this Court. *Morris v. Badger Powhatan/Figgie Int'l, Inc.*, 3 Va.App. 276, 279, 348 S.E.2d 876, 877 (1986). "A question raised by conflicting medical opinion is a question of fact." *City of Norfolk v. Lillard*, 15 Va.App. 424, 429, 424 S.E.2d 243, 246 (1992). However, to be upheld, the commission's findings must be supported by the record.

## *PERDUE v. MCCUTCHAN*

■ On June 1, 1992, Ms. McCutchan began working on the production line at Perdue's plant. She spent ninety percent of her time packing chicken nuggets onto trays and ten percent of her time brushing crumbs off the trays prior to sealing. Several weeks after beginning work, she began experiencing pain in her wrists. The plant nurse told her she was not used to the job, to soak her wrists, and to take Advil.

The pain continued and on February 1, 1993, Ms. McCutchan's condition was diagnosed by Dr. Ronald L. Schubert as "severe bilateral wrist tendinitis caused by sustained motion." She continued under Dr. Schubert's care and on February 23, 1993 was referred by him to Dr. Gordon O. White, a neurologist. Diagnostic studies revealed "bilateral Carpal Tunnel Syndrome, right more than left." Ms. McCutchan was also referred to Dr. G. Edward Chappell, Jr., an orthopedist. On March 4, 1993, Dr. Chappell reported that Ms. McCutchan suffered "definite bilateral carpal tunnel syndrome," which he thought was "caused in significant part by her work on the poultry line." He noted that Ms. McCutchan had held multiple jobs prior to her employment by Perdue, but none had involved the repetitive use of her hands required by her job at the Perdue plant. On March 18, 1993, Dr. Chappell performed a right carpal tunnel release and anterior wrist synovectomy.

Following surgery, both parties sought Dr. Chappell's opinion concerning Ms. McCutchan's condition. By letter of May 19, 1993, Dr. Chappell stated, "[i]t is my opinion that your documented carpal tunnel syndrome is work related." Perdue's counsel asked Dr. Chappell to review Ms. McCutchan's job description and to view a videotape of her job. In his July 1, 1993 response, Dr. Chappell answered "no" to a question asking whether Ms. McCutchan's CTS was caused by work to the exclusion of other causes. He answered "yes" when asked whether her work aggravated an underlying condition causing the CTS. He answered "no" when asked whether it was impossible to tell the cause of the CTS.

■ None of Ms. McCutchan's doctors specifically termed her bilateral CTS a disease. However, the commission may make its determinations on the basis of established medical classification and terminology. Ms. McCutchan's condition did not present an obvious, sudden, mechanical or structural change in her body. Therefore, we conclude that credible evidence supports the commission's finding "that the claimant's diagnosed carpal tunnel syndrome meets the definition of 'disease' within the meaning of the Workers' Compensation Act."

## BOWEN v. AUTOMOTIVE INDUSTRIES, INC., ET AL.

■ Over the course of approximately eight months, Ms. Bowen worked three different jobs for Automotive Industries, Inc. Each job required her to flex and to apply pressure to her hands and wrists. She developed CTS with resulting disability. In a letter to employer's counsel, Ms. Bowen's doctor stated:

Your question was, "is carpal tunnel syndrome a cumulative trauma injury or overuse syndrome sometimes caused by repetitive motion or cumulative trauma?" My answer is yes. Carpal tunnel syndrome results from compression of the median nerve within the carpal tunnel. Any condition that crowds or reduces the capacity of the carpal tunnel may cause these symptoms. . . .

Carpal tunnel syndrome can be seen following trauma such as Colles' fracture of the wrist. It is seen in some metabolic and collagen disorders such as obesity, diabetes mellitus, thyroid disfunction and rheumatoid arthritis. Trauma ca[u]sed by repetitive hand motions also have been identified as the cause of carpal tunnel syndrome especially in those patients [whose] work requires forceful finger and wrist flexion and extension. . . .

In her letter, the doctor noted that Ms. Bowen had not waived the physician/patient privilege and that the information furnished in the letter was "general information and not specific to [Ms. Bowen's] case. . . ."

The commission held that Ms. Bowen had not proved that her carpal tunnel syndrome was a disease. Yet, her proof was substantially the same as Ms. McCutchan's. No evidence described a specific injury. No evidence described an obvious, sudden, mechanical or structural change in her body. The uncontradicted evidence described a condition that falls squarely within the definition of disease set forth in *Piedmont.* Thus, the commission erred in holding that Ms. Bowen had failed to prove that she suffered from an occupational disease and in denying her benefits.

Because no memorandum of agreement had been executed and submitted by the parties, the commission did not err in declining to enforce the settlement alleged by Ms. Bowen.

The decision of the Workers' Compensation Commission in *Perdue Farms, Inc. v. Thea B. McCutchan* is affirmed. Its decision in *Crystal F. Bowen v. Automotive Industries, Inc. and Employers Insurance of Wausau* is reversed, and that case is remanded for the determination and award of benefits.

*Record No. 1108–94–3 Affirmed.*

*Record No. 1532–94–3 Reversed and remanded.*

KOONTZ, Judge, dissenting.

Although medical professionals seem to agree that "carpal tunnel syndrome" (CTS) may be caused by disorders such as obesity, diabetes mellitus, thyroid dysfunction and rheumatoid arthritis, in the present appeals the parties agree that the employees' CTS arose from cumulative trauma resulting from repetitive motion necessitated by their employment tasks. For purposes of our analysis of the compensability of these claims, no logical distinction may be drawn between Ms. McCutchan repeatedly packing chicken nuggets into trays and Ms. Bowen repeatedly using a staple gun to assemble and wrap automobile parts. The repetitive motion involved in both work-related activities caused CTS. Yet, the Workers' Compensation Commission (commission) determined that Ms. McCutchan's CTS was a compensable occupational disease and Ms. Bowen's was not.

The patent inconsistency in these decisions flowed primarily from the commission's interpretation of *Merillat Industries, Inc. v. Parks,* 246 Va. 429, 436 S.E.2d 600 (1993), *rev'g* 15 Va.App. 44, 421 S.E.2d 867 (1992), where the Supreme Court held that under Code § 65.2–400, "the condition for which compensation is sought as an occupational disease must first qualify as a disease." *Id.* at 432, 436 S.E.2d at 601. In Ms. McCutchan's case, no medical opinion in the record established whether CTS was a "disease." The commission reached its determination that her CTS was a disease by relying upon various dictionary definitions of disease, prior decisions of the commission holding that CTS is a disease, and our decision in *Piedmont Mfg. Co. v. East,* 17 Va.App. 499, 438 S.E.2d 769 (1993), issued subsequent to *Merillat* and citing with approval a medical definition of disease. In contrast, in Ms. Bowen's case the treating physician labeled CTS as an "injury" and the commission held that no evidence in the record established that it was a disease.

The majority here resolves the inconsistency in the commission's decisions by holding that both employees established their CTS to be compensable occupational diseases. I applaud that effort to attain consistency. However, because I now believe the commission and this Court have unwittingly invaded the sole province of the legislature to expand the coverage of the Workers' Compensation Act (the Act) with regard to occupational diseases, I cannot join with the majority opinion in the present cases.

Although the issue presented by the present appeals focuses specifically on CTS, a considerable number of appeals from the commission currently pending before this Court involve employee attempts to establish that the cumulative trauma resulting from the repetitive motion associated with employment tasks caused various conditions, ailments and impairments and that these conditions are either compensable occupational diseases under Code § 65.2–400 or compensable ordinary diseases of life under Code § 65.2–401. Regrettably, from the briefs and oral argument in these cases I must

conclude that the general issue is the subject of considerable inconsistency, if not total confusion.

In *Holly Farms v. Yancey*, 228 Va. 337, 321 S.E.2d 298 (1984), *Western Electric Co. v. Gilliam*, 229 Va. 245, 329 S.E.2d 13 (1985),[1] and finally in *Merillat*, the Supreme Court declined to cite with approval a definitive and comprehensive definition of "disease" applicable to these Code sections. Rather, where the condition arose from cumulative trauma resulting from repetitive motion, even though causally connected to the employment of the employee, the Court has repeatedly rejected any definition of disease that is so broad as to render meaningless the distinction between the statutory categories of injury by accident and occupational disease.[2] Such a broad definition would expand the coverage of the Act with regard to occupational diseases, a matter within the sole province of the legislature.

In *Piedmont*, we attempted to respond to the apparent mandate of *Merillat* and provide a definition of disease to resolve those cases involving cumulative trauma resulting from repetitive motion. The result has been, as the present cases illustrate, that compensability determinations turn on whether a particular treating physician labels a condition as a "disease" or an "injury," even though the condition, CTS for example, and the fact that it arises from cumulative trauma

---

1. Although admittedly Code § 65.2–400 was amended and Code § 65.2–401 was enacted in 1986, the logic of the Supreme Court decisions with respect to the prior law still holds true.

2. The Act provides for compensation for many "diseases" which are actually passive exposure trauma conditions, *e.g.* pneumoconiosis, byssinosis, and asbestosis. *See* Code § 65.2–406 (limitations periods for filing claims for these and other conditions); *see also* Code § 65.2–504 (providing for specific compensation for pneumoconiosis). However, a plurality of the Supreme Court has expressly found that emotional distress resulting from harassment is a gradually incurred injury excluded from coverage under the Act. *Middlekauff v. Allstate Insurance Co.*, 247 Va. 150, 154, 439 S.E.2d 394, 397 (1994). Similarly, with the exception of certain scheduled occupations, there is no presumption that hypertension and respiratory conditions are compensable as occupational diseases. *See* Code § 65.2–402.

resulting from repetitive motion remain consistent. Such a result clearly was not intended by the legislature. Upon reconsideration, I believe the definition of disease cited with approval in *Piedmont* and the other general definitions relied upon by the commission do not adequately address the issue presented by these cases.

Recognizing that the rule of *stare decisis* is well respected by this Court, I am reluctant to disavow the decision rendered in *Piedmont*, a decision in which I participated and concurred. Nonetheless, I am equally cognizant that "[t]he rule of *stare decisis* does not apply where the former decision has misunderstood or misapplied the law or is contrary to reason." *Home Brewing Co. v. City of Richmond*, 181 Va. 793, 799, 27 S.E.2d 188, 190 (1943). I cannot in good conscience, in the name of judicial certainty, adhere to the definition of "disease" given in *Piedmont* as I now believe that this definition is contrary to the mandate of *Merillat*. In the words of Justice Harlan, "[a] judicious reconsideration of precedent cannot be as threatening to public faith in the judiciary as continued adherence to a rule unjustified in reason, which produces different results for ... situations that cannot be differentiated in policy." *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 405, 90 S.Ct. 1772, 1790, 26 L.Ed.2d 339 (1970).

In this context, I believe we should adopt a definition of disease contemplated by the statute rather than a purely medical one. Clearly, that definition should include all diseases caused by infectious biological agents where the illness is contracted as a result of exposure uncommon to ordinary life. In addition, it should include specifically enumerated conditions resulting from occupational exposure to poisons, chemicals, fumes, dusts, spores, radiation and other environmental hazards. *See* 1B Arthur Larson, *The Law of Workmen's Compensation* § 41.33(a) (1994). However, the Supreme Court has mandated that whatever the scope of that definition may properly be, it does not include conditions of cumulative trauma resulting from repetitive motion arising

solely from the employee's physical employment activities.[3]

In the present appeals, such is clearly the case. Ms. McCutchan's CTS and Ms. Bowen's CTS both arose from the repetitive motion necessitated by the physical performance of their employment tasks, and, accordingly, their CTS was not an occupational disease contemplated by the Code as it presently provides. To extend coverage for their conditions is an act not within the province of the commission or the courts. I would reverse the commission in Ms. McCutchan's case and, for different reasons, affirm the commission in Ms. Bowen's case.

For these reasons, I respectfully dissent.

---

**3.** I concede that the majority of the cases from the Supreme Court that have so held, *see, e.g., Morris v. Morris,* 238 Va. 578, 589, 385 S.E.2d 858, 865 (1989), address the issue with respect to whether the condition resulting from a cumulative trauma was a "gradually incurred injury" and thus not an injury resulting from an "identifiable incident or sudden precipitating event." *Id.* None of these cases have dealt with CTS specifically. Nonetheless, I believe it would be unwise to permit or require the commission and the courts to make arbitrary distinctions for each individual malady caused by cumulative trauma resulting from repetitive motion.