COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Senior Judges Cole and Duff


PUBLIC BROADCASTING SERVICES
AND
GREAT NORTHERN INSURANCE COMPANY

v.   Record No. 0754-95-4            MEMORANDUM OPINION[*]
                                        PER CURIAM
MARY E. PAX                          NOVEMBER 28, 1995


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Charles P. Monroe (Mell, Brownell & Baker, on brief),
          for appellants.

          Desiree M. Lange (Chasen & Boscolo, on brief), for
          appellee.



     Public Broadcasting Services and its insurer (hereinafter

collectively referred to as "employer") appeal a decision of the

Workers' Compensation Commission finding that Mary E. Pax's

bilateral tendinitis and/or tenosynovitis qualifies as a

compensable occupational disease within the meaning of "disease"

under the Workers' Compensation Act ("the Act").  Pursuant to

Rule 5A:21(b), Pax raises an additional question.  She contends

that the commission erred in finding that she failed to meet her

burden of proving that her ordinary disease of life was caused by

her employment.  For the following reasons, we affirm the

commission's ruling that Pax's condition constitutes a "disease"

under the Act, and we reverse the commission's ruling that Pax

          [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

failed to prove that her condition was caused by her employment.

The facts are not in dispute. In September 1989, Pax began working for employer as a contracts associate or clerical worker. In her job, she used a keyboard to enter data into a computer. When she returned from vacation in September 1992, she was confronted with a backlog of work. During her efforts to reduce this backlog, she began to notice stiffness, soreness, and pain in her hands. Pax's symptoms persisted and she sought medical treatment.

On October 1, 1992, Pax was examined by Dr. Bruce M. Freedman, who diagnosed bilateral tenosynovitis and tendinitis. In his October 1, 1992 office notes, Dr. Freedman opined that "[w]ithout a history of other significant medical problems or strenuous activities outside the workplace, I believe that her wrist pains are causally related to her work. The sudden onset of this pain clinically presents as acute tendinitis or inflammation of the synovium within the carpal canal and distal forearms."

In February 1993, Dr. Freedman referred Pax to Dr. Robert Kurtzke for a neurological evaluation. On February 4, 1993, Dr. Kurtzke examined Pax and noted that her job predisposed her to possible median nerve compression at the wrist. He recommended Pax undergo nerve conduction studies and EMG. The results of these studies were normal.

In February 1993, Pax also came under the care of Dr. Edward C. Rabbitt, an orthopedic surgeon. Dr. Rabbitt's March 24, 1993 Attending Physician's Report reflects that he believed that Pax's

condition was related to her employment.

In October 1994, Pax was examined by Dr. Stuart R. Stark at employer's request.  Dr. Stark suspected carpal tunnel syndrome, even though Pax had normal electrodiagnostic studies in the past.  He recommended that repeat studies be performed.  Dr. Stark stated that if the studies were abnormal, he would opine within a reasonable degree of medical certainty that Pax had work-related carpal tunnel syndrome.  If the studies came back as normal, he might have a different opinion.  There is no evidence that these studies were ever performed.

Relying upon the physicians' diagnoses, and the dictionary definitions of disease and tenosynovitis, the commission found that Pax's condition constituted a "disease" within the meaning of occupational disease under the Act.  However, the commission denied compensation on the ground that Pax failed to prove by clear and convincing evidence, to a reasonable degree of medical certainty, that her ordinary disease of life was caused by her employment.

### I.  "Disease" Issue

In Piedmont Mfg. Co. v. East, 17 Va. App. 499, 503, 438 S.E.2d 769, 772 (1993), we defined "disease" as:

> any deviation from or interruption of the normal structure or function of any part, organ, or system (or combination thereof) of the body that is manifested by a characteristic set of symptoms and signs and whose etiology, pathology, and prognosis may be known or unknown.

3

"[T]he definition enunciated in Piedmont [has been recognized by this Court] as the general and accepted meaning of the term 'disease,' a term which is presumed to be known by the legislature and is employed by it without restriction in Code §§ 65.2-400 and 65.2-401." Perdue Farms, Inc. v. McCutchan, 21 Va. App. 65, 68, 461 S.E.2d 431, 435 (1995).

Tendinitis is defined as "inflammation of tendons and of tendon-muscle attachments." Dorland's Illustrated Medical Dictionary 1315 (26th ed. 1985). Tenosynovitis is defined as "inflammation of a tendon sheath." Id. at 1316. Using these general medical definitions, as we did for carpal tunnel syndrome in Perdue, we find that they place tendinitis and tenosynovitis within the definition of disease set forth in Piedmont and approved of in Perdue.

On appeal, we view the evidence in the light most favorable to the prevailing party below. R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). This Court must uphold the commission's factual findings if supported by credible evidence. James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989).

As in Perdue, Pax's condition did not present as an obvious, sudden, mechanical or structural change in her body. Rather, credible evidence supports the commission's finding that Pax's tendinitis and/or tenosynovitis are conditions characterized as "diseases" within the meaning of the Act.

4

## II.  Causation

Rule 5A:21(b) permits appellee to raise in her reply brief "any additional questions the appellee wishes to present."  The rule makes no exception for instances in which appellee may have also filed her own appeal.  Accordingly, appellee is not barred from raising the same issues in her reply brief as those raised in her own appeal, which was dismissed.

On appeal, we view the evidence in the light most favorable to the prevailing party below.  R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).  Unless we can say as a matter of law that Pax's evidence sustained her burden of proving causation, the commission's findings are binding and conclusive upon us.  Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

The commission incorrectly found that "Dr. Freedman did not comment on causation, except to note that the claimant related her symptoms to her work and that exercising with weights at home' . . . may be contributing somewhat to her upper extremity problems. . . .'"  The commission also incorrectly concluded that "[n]one of the physicians have stated that her work was the primary cause of her symptoms."

On October 1, 1992, Dr. Freedman opined that Pax's wrist pains were causally related to her work.  No other medical evidence contradicts this opinion nor did Dr. Freedman ever change his opinion.  Dr. Rabbitt's March 24, 1993 Attending

5

Physician's Report also provides evidence of a causal connection.

For the reasons stated, we affirm the commission's decision as to the "disease" issue.  However, we reverse and remand as to the causation issue in order to allow the commission to reconsider the evidence already of record in light of Drs. Freedman's and Rabbitt's opinions concerning causation.

<u>Affirmed in part,</u>
<u>reversed and remanded in part.</u>