COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Senior Judges Cole and Duff


ROCCO FURTHER PROCESSING
AND
HOME INDEMNITY COMPANY

v.   Record No. 1618-95-3                   MEMORANDUM OPINION[*]
                                                 PER CURIAM
BARBARA ELLEN NELSON                        DECEMBER 29, 1995


         FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              (Cathleen P. Welsh; Wharton, Aldhizer & Weaver, on
              brief), for appellants.

              (A. Thomas Lane, Jr., on brief), for appellee.



     Rocco Further Processing and its insurer (hereinafter

collectively referred to as "employer") contend that the Workers'

Compensation Commission erred in finding that Barbara E. Nelson's

bilateral de Quervain's tenosynovitis qualifies as a compensable

occupational disease within the meaning of "disease" under the

Workers' Compensation Act ("the Act").  Upon reviewing the record

and the briefs of the parties, we conclude that this appeal is

without merit.  Accordingly, we summarily affirm the commission's

decision.  Rule 5A:27.

     The facts are not in dispute.  The parties stipulated that

claimant's job as a line worker required repetitive use of her

hands and arms.  Claimant presented to Dr. Irvin E. Hess, an

orthopedic surgeon, on July 22, 1994, complaining of bilateral

_____
     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

arm pain. Dr. Hess diagnosed bilateral de Quervain's tenosynovitis. The parties stipulated that claimant had no known exposure to this condition outside of the employment. Dr. Hess did not find the presence of any other disease which could cause claimant's condition. Based upon Dr. Hess' opinions and the medical records, the commission found that claimant's condition constituted a "disease" caused by her employment.

In Piedmont Mfg. Co. v. East, 17 Va. App. 499, 503, 438 S.E.2d 769, 772 (1993), we defined "disease" as

> any deviation from or interruption of the
> normal structure or function of any part,
> organ, or system (or combination thereof) of
> the body that is manifested by a
> characteristic set of symptoms and signs and
> whose etiology, pathology, and prognosis may
> be known or unknown.

"[T]he definition enunciated in Piedmont [has been recognized by this Court] as the general and accepted meaning of the term 'disease,' a term which is presumed to be known by the legislature and is employed by it without restriction in Code §§ 65.2-400 and 65.2-401." Perdue Farms, Inc. v. McCutchan, 21 Va. App. 65, 69, 461 S.E.2d 431, 433 (1995). In Piedmont, we cited the Sloane-Dorland Ann. Medical Legal Dictionary definition of de Quervain's disease. Piedmont, 17 Va. App. at 503-04, 438 S.E.2d at 772. This general medical definition places de Quervain's tenosynovitis within the definition of disease set forth in Piedmont and approved of in Perdue.

On appeal, we view the evidence in the light most favorable

2

to the prevailing party below.  <u>R.G. Moore Bldg. Corp. v.</u> <u>Mullins</u>, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).  On appeal, this Court will uphold the commission's factual findings if supported by credible evidence.  <u>James v. Capitol Steel</u> <u>Constr. Co.</u>, 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989).

Similar to the facts of the <u>Perdue</u> case, claimant's condition did not present an obvious, sudden, mechanical or structural change in her body.  Based upon our holdings in <u>Piedmont</u> and <u>Perdue</u>, we conclude that credible evidence supports the commission's finding that claimant's bilateral de Quervain's tenosynovitis is a condition characterized as a "disease" within the meaning of the Act.

Accordingly, we affirm the commission's decision.

<u>Affirmed.</u>