COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Beales, Callins and Senior Judge Clements
Argued at Richmond, Virginia


HANOVER COUNTY, ET AL.

                                 MEMORANDUM OPINION[*] BY

v.        Record No. 0715-23-2        JUDGE JEAN HARRISON CLEMENTS
                                   JULY 9, 2024

SCOTT W. MOORE


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Ralph L. Whitt, Jr. (A. Jacob Perkinson; Whitt Del Bueno Clark, on
briefs), for appellants.

Bradford E. Goodwin (Reid Goodwin, PLC, on brief), for appellee.


In this appeal, we consider whether a claimant's thoracic aortic aneurysm (TAA) was

"heart disease" under Code § 65.2-402(B). That issue presents a question of fact, and credible

evidence supports the Commission's conclusion that it was. Accordingly, we affirm.

BACKGROUND

"On appeal from a decision of the Commission, 'the evidence and all reasonable

inferences that may be drawn from that evidence are viewed in the light most favorable to the

prevailing party below.'" *Jalloh v. Rodgers*, 77 Va. App. 195, 200 n.2 (2023) (quoting *City of

Charlottesville v. Sclafani*, 70 Va. App. 613, 616 (2019)). The record evidence establishes that

Scott Moore began working as a firefighter for Hanover County in 2003. In 2007, he began

treatment with Dr. Dean Caven, a board-certified invasive cardiologist. A CT scan in September

2021 revealed that Moore had a TAA, which is "an enlargement of the aorta beyond a typical size."

The TAA prevented Moore from "any heavy physical lifting" that required "straining," or any

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

"maneuver" that required him to use his "belly muscles to bear down and lift." Without surgery, those limitations were permanent, and even with surgery, Dr. Caven doubted that Moore would be able to return to normal physical activity.

During a deposition, Dr. Caven explained that the aorta is "the tube that comes from the heart to the body . . . where all the blood goes through." It has "multiple layers" comprised of "smooth muscle, some single cells, and then some . . . fat tissue." "[T]here can be a separation of those layers," resulting in an aortic rupture at a "weak point," which would cause "sudden death." The County's attorney asked Dr. Caven whether a TAA is "heart disease." Dr. Caven replied, "It depends [on] what you mean by heart disease. Does it involve the left ventricle? No. Does it involve the coronary artery? No. Is it a problem with any of the valves? No. Is it a problem with the aorta? Yes." Dr. Caven was unable to determine whether Moore's job as a firefighter caused the TAA. But he excluded Moore's family's history of coronary artery disease as a cause, explaining that TAA was not the same as coronary artery disease; it was not "heart disease" but an "aortic disease."

Moore filed a claim for benefits seeking a lifetime medical award. The parties stipulated that Moore's TAA resulted in a partial disability that prevented him from performing his job, but the County contested that Moore's TAA was causally related to his employment as a firefighter. It acknowledged that under Code § 65.2-402(B), a firefighter's "heart disease" is presumed compensable under certain circumstances. Nevertheless, the County argued that the presumption did not apply because a TAA is not "heart disease." The County conceded that it could not rebut the presumption if it applied.

At a hearing on the claim, Moore submitted a written statement from Dr. Stanley Tucker, a cardiologist who had practiced in the Richmond area for more than 40 years. Dr. Tucker explained that "the aorta is the body's main artery that takes blood away from the heart," and "the aortic valve

is the main valve between the heart and aorta." He opined that a TAA "is considered a 'heart disease' and would be treated by a cardiologist." He also stated that any conditions involving the aortic valve "would also be considered a 'heart disease.'"

Relying on Dr. Tucker's written opinion, the deputy commissioner concluded that a TAA "qualifies as heart disease" and awarded Moore lifetime medical benefits. A divided Commission affirmed on review. The Commission majority found that Drs. Caven and Tucker were equally well-situated to opine on "whether [a] thoracic aortic aneurysm is 'heart disease'" because this case does not "raise a dispute between experts regarding the diagnosis, causation, or the treatment plan." Accordingly, it declined to give Dr. Caven's opinion greater weight even though he was the treating physician. Next, the Commission found that Dr. Caven had not testified unequivocally that a TAA is not heart disease because some vascular diseases, such as coronary artery disease, are also heart diseases. Further, Dr. Caven's statement that a TAA is not heart disease is best understood in the context of his explanation that Moore's TAA was distinguishable from his family's history of coronary artery disease. The Commission was "persuaded" by Dr. Tucker's opinion that a TAA "is a 'heart disease.'" The Commission emphasized that the aorta is connected to the heart and "performs a vital function carrying blood directly away from the heart." It also noted that in an illustrated medical dictionary, the aorta appears in a photograph entitled, "Structures of the Heart."

On appeal, the County contends that Moore failed to prove that his TAA is "heart disease" under Code § 65.2-402(B). It maintains that whether a condition is heart disease is a legal question and that the Commission relied on an "overly broad" definition that encompassed Moore's asymptomatic TAA, which does not involve a component of the heart or directly affect the heart's functioning. In addition, the County argues that the Commission should have credited Dr. Caven's well-explained opinion as Moore's treating physician over Dr. Tucker's "unexplained and vague" conclusion. The County insists that the Commission misconstrued Dr. Caven's opinion as

- 3 -

"equivocal" while "blindly accept[ing]" Dr. Tucker's opinion "to advance its own view as to what should be covered" under Code § 65.2-402(B). Moore counters that this appeal presents a simple question of fact and that the Commission reasonably and appropriately weighed the competing expert testimony in concluding that his TAA was compensable "heart disease" under Code § 65.2-402(B).

ANALYSIS

The Workers' Compensation Act "provides coverage for impairments arising out of and in the course of employment that fall into one of two categories: (1) 'injury by accident' or (2) 'occupational disease.'" *A New Leaf, Inc. v. Webb*, 26 Va. App. 460, 465 (1998) (quoting Code § 65.2-101), *aff'd*, 257 Va. 190 (1999). Generally, whether a particular ailment is a compensable occupational disease is a mixed question of law and fact. *Id.* The "factual part of the inquiry" involves "any facts relevant to the nature and cause of the impairment." *A New Leaf v. Webb*, 257 Va. 190, 196 (1999) (citing *The Stenrich Group v. Jemmott*, 251 Va. 186, 192 (1996)). The "legal part of the mixed question" involves determining whether a condition "constitutes an occupational disease." *Id.*

Under Code § 65.2-402(B), several specified ailments are presumed compensable occupational diseases. *See Snellings v. Stafford Cnty. Fire & Rescue Dep't*, 62 Va. App. 568, 571-72 (2013) (holding that Code § 65.2-402(B) provides a "statutory presumption" that there is "a causal connection between certain occupations and death or disability resulting from *specified* diseases" (emphasis added)). Relevant here, if a "salaried or volunteer firefighter[]" has completed at least "five years of service," his "heart disease . . . resulting in total or partial disability" is presumptively an occupational disease, suffered in the line of duty "unless such presumption is *overcome* by a preponderance of competent evidence to the contrary." Code § 65.2-402(B) (emphasis added). Thus, "to establish a prima facie case" under Code

§ 65.2-402(B), a claimant "need only prove his occupation" and that he suffers from a specified disease under the statute. *Samartino v. Fairfax Cnty. Fire & Rescue*, 64 Va. App. 499, 506 (2015) (quoting *Town of Purcellville Police v. Bromser-Kloeden*, 35 Va. App. 252, 259 (2001)); *Snellings*, 62 Va. App. at 572. The burden then shifts to the employer to present evidence to rebut the presumption. *Samartino*, 64 Va. App. at 506.

It is uncontested that Moore is a firefighter who provided more than "five years of service." Code § 65.2-402(B). It is also uncontested that if the statutory presumption applies, the County cannot rebut it. Thus, the only question left for our review is the "factual part" of the mixed question of law and fact—whether Moore suffered from "heart disease." *Bass v. City of Richmond Police Dep't*, 258 Va. 103, 114 (1999) (citing *Fairfax Cnty. Fire & Rescue Servs. v. Newman*, 222 Va. 535, 539 (1981)). As we have previously held, whether a specific ailment is "heart disease" under Code § 65.2-402(B) is a question of "medical fact." *Commonwealth v. Haga*, 18 Va. App. 162, 166-67 (1994).[1] *See also City of Newport News v. Kahikina*, 71 Va. App. 536, 544 n.4 (2020) (holding that the Commission's factual finding that "cardiomyopathy is a form of heart disease" was "conclusive and binding upon this Court" (quoting *United Airlines, Inc. v. Hayes*, 58 Va. App. 220, 238 (2011))). Consequently, we must defer to the Commission's conclusion on that factual question. *Haga*, 18 Va. App. at 166-67.

---

[1] *Haga* has not been reversed or overturned and is therefore binding under the interpanel accord doctrine. *See White v. Commonwealth*, 67 Va. App. 599, 612 n.7 (2017) ("A holding by one panel of the Court of Appeals of Virginia 'bind[s] all other three-judge panels under the interpanel accord doctrine.'" (alteration in original) (quoting *Startin v. Commonwealth*, 56 Va. App. 26, 39 n.3 (2010) (en banc))). The County does not argue otherwise and even repeatedly cites *Haga* as "instructive." Although the County argues that *Haga* defines "heart disease" as a disease that is "in the heart organ or in a bodily component integral to 'serving the heart,'" we did not attempt to define "heart disease" in *Haga*. Rather, we held merely that we owe deference to the Commission's factual conclusion of whether a condition is "heart disease" under Code § 65.2-402(B). *Haga*, 18 Va. App. at 166-67.

Indeed, "'[t]he scope of a judicial review of the fact finding function of a workers' compensation commission . . . is "severely limited, partly in deference to the agency's expertise in a specialized field."'" *Roske v. Culbertson Co.*, 62 Va. App. 512, 517 (2013) (quoting *Southside Va. Training Ctr. v. Ellis*, 33 Va. App. 824, 828 (2000)). Consequently, it is well-established that "[q]uestions raised by conflicting medical opinions" are factual issues, which "must be decided by the commission." *Penley v. Island Creek Coal Co.*, 8 Va. App. 310, 318 (1989). "This appellate deference is not a mere legal custom, subject to a flexible application, but a statutory command making clear that the commission's decision 'shall be conclusive and binding as to all questions of fact.'" *Central Va. Obstetrics & Gynecology Assocs., P.C. v. Whitfield*, 42 Va. App. 264, 279 (2004) (citation omitted). Thus, "[m]edical evidence" in particular "remains 'subject to the commission's consideration and weighing.'" *Id.* (quoting *Wolfe v. Va. Birth-Related Neuro. Injury Comp. Program*, 40 Va. App. 565, 580 (2003)). We will not disturb the Commission's factual conclusions based on conflicting evidence provided "'there was credible evidence presented such that a reasonable mind *could* conclude that the fact in issue was proved,' even if there is evidence in the record that would support a contrary finding." *Artis v. Ottenberg's Bakers, Inc.*, 45 Va. App. 72, 84 (2005) (en banc) (quoting *Westmoreland Coal Co. v. Campbell*, 7 Va. App. 217, 222 (1988)).

The record demonstrates that the Commission carefully weighed and resolved the competing medical evidence before it, including Drs. Caven and Tucker's opinions. To begin, the Commission properly noted that Dr. Caven did not unequivocally opine that Moore's TAA was *not* heart disease. Instead, when initially asked whether a TAA was heart disease, replied that "[i]t depends on what you mean by heart disease" before specifying that a TAA involved a "problem with the aorta," which carries blood "from the heart to the body." Moreover, Dr. Caven's later statement that a TAA "is not heart disease" was made in the context of his

explanation that Moore's family history of coronary artery disease did not contribute to or cause his TAA. Considering that context, the Commission reasonably found that Dr. Caven was not explicitly contradicting his testimony given only moments earlier; rather, he was differentiating Moore's TAA from his family's coronary artery disease, which is a commonly recognized form of "heart disease."[2] *See Bristol City Fire Dep't v. Maine*, 35 Va. App. 109, 112-17 (2001); *Bass*, 258 Va. at 111-14. By contrast, Dr. Tucker, who had been a practicing cardiologist for over 40 years, unequivocally opined that a TAA "is considered 'heart disease' and would be treated by a cardiologist." Furthermore, like Dr. Caven, Dr. Tucker explained that the aorta "is the body's main artery that takes blood away from the heart." Given those circumstances, the Commission was reasonably persuaded by Dr. Tucker's opinion.

The County nevertheless insists that the Commission should have given deference to Dr. Caven's opinion because he was Moore's treating physician. As noted above, however, Dr. Caven and Dr. Tucker's opinions do not necessarily contradict each other and in fact significantly overlapped. Nevertheless, to the extent their opinions did conflict, the Commission was not required to credit Dr. Caven's simply because he was the treating physician. Indeed, it is well-established that although great weight should be given to a treating physician's evidence, the Commission "is not required to accept it." *Vital Link, Inc. v. Hope*, 69 Va. App. 43, 64 (2018) (quoting *Hayes*, 58 Va. App. at 238). "If there is *any doubt* in the treating physician's opinion, or if there is contrary expert medical opinion, 'the [C]omission is free to adopt that

---

[2] The County asks us to view Dr. Caven's testimony as "the process of one beginning to think out loud before addressing . . . a complex concept," which "thought process" ended with Dr. Caven's conclusion that a TAA "is a disease of the aorta . . . not heart disease." It is well-established, however, that the Commission, not this Court on appeal, is responsible for weighing expert evidence. *Penley*, 8 Va. App. at 318. Thus, we reject the County's invitation to usurp the fact-finding function by recasting and reweighing Dr. Caven's testimony to reach a contrary factual conclusion.

which is most consistent with reason and justice.'" *United Airlines, Inc. v. Sabol*, 47 Va. App. 495, 501-02 (2006) (emphasis added) (quoting *Williams v. Fuqua*, 199 Va. 709, 714 (1958)).

Only Dr. Tucker provided an unequivocal opinion on whether TAA was heart disease, stating categorically that it is. Moreover, the question of fact at issue in this case did not depend on a nuanced understanding of Moore's treatment history. Rather, the Commission had to decide whether a TAA was heart disease as a medical fact. *Haga*, 18 Va. App. at 166-67. Thus, the Commission was not required to give greater weight to Dr. Caven's opinion in answering that question because he was the treating physician.

CONCLUSION

The Commission's factual finding that Moore's TAA was "heart disease" under Code § 65.2-402(B) was supported by credible evidence and is therefore binding on appeal. Thus, Moore was entitled to the statutory presumption, which the County cannot overcome, and the Commission's award is affirmed.

*Affirmed*.