## Norfolk

CITY OF NORFOLK

v.

DAVID B. LILLARD

No. 2332-91-1

Decided December 8, 1992

COUNSEL

Norman A. Thomas, Deputy City Attorney (Philip R. Trapani, City Attorney, on briefs), for appellant.

William P. Williams (Evans, Williams & Levinson, on brief), for appellee.

OPINION

**FITZPATRICK, J.**—The City of Norfolk (the city) contends that the Workers' Compensation Commission erred in awarding occupational disease benefits to David B. Lillard (claimant), who was employed by the city as a fire captain for nineteen years. The issues on appeal are whether the employer's evidence rebutted the presumption provided by former Code § 65.1-47.1[1] and whether the commission erred in its determination of the quantum of factual evidence necessary to rebut

---

[1] Effective October 1, 1991, Title 65.1 was recodified as Title 65.2. All references in this opinion are to Title 65.1, in effect at the time of the claimant's disability.

the statutory presumption. We hold that, because the employer's rebuttal evidence neither excluded a work-related factor as a cause of the heart disease nor advanced competent medical evidence of a non-work-related cause, the finding of the commission that the employer failed to rebut the presumption in claimant's favor is conclusive and binding on appeal. Accordingly, we affirm the award.

The claimant, age forty-four, was a city fire fighter for nineteen years. During his tenure with the Fire Department, he achieved the rank of captain. On October 25, 1989, while he was at home, the claimant suffered an acute myocardial infarction. On November 1, 1989, the claimant successfully underwent triple coronary bypass surgery.

On March 22, 1990, the claimant filed an application for a hearing, alleging that he was totally and permanently disabled due to a heart condition following a myocardial infarction on October 25, 1989. The parties stipulated to the claimant's average weekly wage and that the presumption of Code § 65.1-47.1 (now Code § 65.2-402) applied to this case. The city contends that its evidence rebutted both the statutory presumption and the affirmative evidence presented by the claimant. We disagree.

■ Code § 65.1-47.1 provides a rebuttable presumption that, absent a preponderance of competent evidence to the contrary, a causal connection exists between an individual's employment as a salaried fire fighter and certain diseases.[2] The effect of the presumption is to eliminate the need for a claimant to prove a causal connection between his disease and his employment. In the absence of competent evidence to the contrary, the statutory presumption controls and the claimant prevails.

---

[2]   Code § 65.1-47.1 provides: **Presumption as to death or disability from respiratory disease, hypertension or heart disease.** The death of, or any condition or impairment of health of, salaried or volunteer fire fighters caused by respiratory diseases, and the death of, or any condition or impairment of health of, salaried or volunteer fire fighters, or of any member of the State Police Officers Retirement System, or of any member of a county, city or town police department, or of a sheriff, or of a deputy sheriff, or city sergeant or deputy city sergeant of the City of Richmond, caused by hypertension or heart disease, resulting in total or partial disability shall be presumed to be an occupational disease suffered in the line of duty that is covered by this Act unless the contrary be shown by a preponderance of competent evidence.

■ In order to establish a prima facie case, the claimant need only prove his occupation and his disability from one of the diseases identified by statute. The presumption shifts the burden of going forward with the evidence from the claimant to the employer. *Page v. City of Richmond*, 218 Va. 844, 241 S.E.2d 775 (1978).

The claimant had several "risk factors" commonly associated with heart disease. Among the factors identified were his gender, a stressful occupation and daily cigarette smoking. The city invites us to adopt the claimant's "risk factors" as the cause of his heart disease. However, no medical evidence in this case proves that these factors "caused" his coronary artery disease.

The commission received conflicting medical evidence from four doctors. Dr. Parker, the claimant's treating physician, was not deposed but submitted a letter dated January 30, 1990, which states in pertinent part:

> On medical grounds, the risk factors include smoking and male gender. Other known medical risk factors are absent.
>
> On the basis of my understanding of the law, his occupation as a firefighter is presumed to be causative unless proven otherwise. I have *no medical information that would indicate that employment as a firefighter was not related to his present condition.*

(emphasis added). The claimant requested a further examination by Dr. Dyer, who is a fire surgeon and an internist with subspecialties in cardiology and occupational medicine. Dr. Dyer's report concludes:

> In view of the fact that [the claimant] had a normal exercise treadmill test prior to his myocardial infarction, and that he was in a relative state of good health, and served in a noteworthy large tugboat fire in the fall of 1989, just prior to his myocardial infarction, lacking significant family history of coronary disease, and recalling the heavy fire equipment he carried at the tugboat fire, plus the onset of chest pain radiating up into his neck, and over into his shoulder at that time, I believe the coronary occlusion occurred as a direct causal relationship to his firefighting duties, especially the tugboat fire in 1989. His documented 19 years of firefighting assignments, plus the known associated physical and emotional stress, and the unprotected exposure to toxic fumes, chemicals, and gases, are the explanation for his present

documented coronary artery disease and recent totally disabling myocardial infarction.

I have documented many other fire fighters in my career as the chief fire surgeon for the D.C. Fire Department, and am familiar with the cardiotoxic effect of plastic decomposition fumes as well as the carbon monoxide at the fireground on the human heart. Continued exposure to these toxic products at the fireground, as well as the continued exposure to stress, emotional and physical, in an individual developing coronary artery disease, is a known cause of myocardial infarction. Captain Lillard is a classic example of this pattern of disease. Coronary disease is a known occupational hazard for firefighters.

The city argued that Dr. Dyer was biased in favor of the claimant because he was a former chief of the D.C. Police and Fire Clinic and because ten percent of his private practice was devoted to occupational disease consultations.

The city relied on the testimony of Dr. Stein and Dr. Drew to rebut the statutory presumption of Code § 65.1-47.1. Dr. Stein, a cardiologist and partner of Dr. Parker, treated the claimant on several occasions. Dr. Stein opined in a letter to the City that:

The causative reason for Mr. Lillard's present cardiovascular disease is secondary to atherosclerotic coronary artery disease. This is probably related to smoking and mildly elevated cholesterol levels.

. . . In my opinion, I do not believe that Mr. Lillard's occupation as a fire fighter was related to his present condition or caused his atherosclerotic coronary artery disease. However, I think he will be totally disabled from this occupation.

During his deposition, Dr. Stein testified that smoking is a recognized cause of heart disease, and that there exists a strong correlation between smoking and the development of coronary artery disease. However, he acknowledged that known risk factors (including smoking, elevated cholesterol, family history, occupational exposure, and male gender) are simply statistical indicators of higher probabilities of heart disease in the general population. On cross-examination Dr. Stein stated:

The cause of [Mr. Lillard's] heart disease is atherosclerosis. I think the question you want to know is what causes cholesterol build-up in his arteries. . . . I don't have concrete proof of the cause of his atherosclerosis.

Dr. Drew was retained by the city to conduct an independent medical examination of the claimant. Dr. Drew's report states in pertinent part:

ASSESSMENT: History of coronary artery disease probably starting approximately September 1989 when [the claimant] was involved with a tugboat fire and then having a diaphragmatic infarction in late October 1989. He has had triple bypass surgery because of three vessel disease. . . .

It would appear to me that he obviously could not return to the rigors of fire fighting and probably should be employed in something less strenuous. As far as the relationship of his work as a fireman, I believe the most important factors in his underlying coronary disease are probably related to some family history, reasonably heavy smoking and possibly a family background of diabetes.

It would appear from history, that a precipitating event could have occurred with the excessive activity in the tugboat fire of September 1989. This certainly is when he first mentions any chest discomforts and could have aggravated the underlying coronary disease that existed. . . .

The city's evidence established that the claimant's history included several "risk factors" and, therefore, the commission could reasonably infer that the claimant had a greater statistical probability for contracting coronary disease. However, we hold that the showing of "risk factors" alone does not rebut the statutory presumption and does not establish competent medical evidence of a non-work-related cause of the disabling disease.

█ The city's evidence was, at best, equivocal as to the specific cause of the claimant's heart disease. "A question raised by conflicting medical opinion is a question of fact." *Commonwealth, Dep't of Corrections v. Powell*, 2 Va. App. 712, 714, 347 S.E.2d 532, 533 (1986) (citing *Pocahontas Fuel Co. v. Agee*, 201 Va. 678, 680, 112 S.E.2d 835, 837 (1960); *Estep v. Blackwood Fuel Co.*, 185 Va. 695,

699, 40 S.E.2d 181, 183 (1946); *Celanese Fibers Co. v. Johnson*, 229 Va. 117, 120, 326 S.E.2d 687, 690 (1985)). On review by this Court, a determination of legal causation by the commission is "a factual finding that will not be disturbed on appeal if there is credible evidence to support [it]." *Ingersoll-Rand Co. v. Musick*, 7 Va. App. 684, 688, 376 S.E.2d 814, 817 (1989) (citing Code § 65.1-98). "The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the commission's finding." *Wagner Enters., Inc. v. Brooks*, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991) (citing *Franklin Mortgage Corp. v. Walker*, 6 Va. App. 108, 110-11, 367 S.E.2d 191, 193 (1988) (en banc)). In this case, the record clearly contains credible evidence to support the commission's findings.

▮ Additionally, we reject the city's argument that the commission erred in its determination of the quantum of factual evidence necessary to rebut the statutory presumption. The law governing the sufficiency of evidence to rebut the statutory presumption is well settled.

> In order to rebut the presumption, it is not sufficient that the employer merely adduce evidence that the heart disease was not caused by the employment; the employer must establish by competent medical evidence a non-work-related cause to rebut or overcome the statutory presumption that causation exists.

*Virginia Dep't of State Police v. Talbert*, 1 Va. App. 250, 253, 337 S.E.2d 307, 308 (1985); *see also County of Amherst Bd. of Supervisors v. Brockman*, 224 Va. 391, 297 S.E.2d 805 (1982); *Fairfax County Fire & Rescue Dep't v. Mitchell*, 14 Va. App. 1033, 421 S.E.2d 668 (1992).

▮ "The construction afforded a statute by the public officials charged with its administration and enforcement is entitled to be given great weight by a court. The legislature is presumed to be cognizant of such construction. When it has long continued without change, the legislature is presumed to have acquiesced therein." *Watford v. Colonial Williamsburg Found.*, 13 Va. App. 501, 505, 413 S.E.2d 69, 71-72 (1992).

Code § 65.1-47.1 (now § 65.2-402) has long been recognized as a remedial statute, enacted by the legislature to overcome the difficulty that a fire fighter would otherwise have in proving causation. We presume that the legislature is cognizant of the interpretation the statute has been given by this Court and the Supreme Court of Virginia, and of the commission's application of Virginia precedent. Accordingly,

we conclude that such construction is consistent with the legislative intent, particularly in the absence of any changes to the rebuttal standard in the recent amendments and recodification of Title 65.1.[3] Finding no basis for reexamining existing Virginia precedent, we hold that the commission's application of the law was correct. For the reasons stated, the award appealed from is affirmed.

*Affirmed.*

Baker, J., and Bray, J., concurred.

---

[3] Code § 65.2-402(A) provides the same presumption to fire fighters "unless such presumption is overcome by a preponderance of competent evidence to the contrary."