COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Annunziata and Senior Judge Cole
Argued at Richmond, Virginia


GEORGIA-PACIFIC CORPORATION
                                              OPINION BY
v.  Record No. 1805-96-2            JUDGE JAMES W. BENTON, JR.
                                            MARCH 25, 1997
CLAUDE FRANKLIN DANCY


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

               Cecil H. Creasey, Jr. (Mark M. Caldwell, III;
               Sands, Anderson, Marks & Miller, on briefs),
               for appellant.

               Brian J. Cusce for appellee.


     Georgia-Pacific Corporation appeals from a ruling of the

Workers' Compensation Commission granting Claude Franklin Dancy

permanent total disability benefits.  Georgia-Pacific contends

that the commission erred (1) as a matter of law in awarding

permanent total disability benefits, (2) in finding that Dancy

suffered a permanent loss of use of his right leg, and (3) in

refusing to allow after-discovered evidence.  For the reasons

that follow, we affirm the commission's ruling.

                                I.

     Dancy suffered a compensable injury by accident on May 20,

1985, when his legs were crushed by boards on a conveyor.  As a

result, the commission awarded Dancy temporary total disability

benefits.  Before the temporary total disability benefits

terminated, Dancy filed a claim for permanent total disability

benefits.

At the evidentiary hearing, the evidence proved that when Dancy slipped onto a discharge conveyor, a load of boards hit him. Dancy's left foot was crushed, his left leg was broken in four places, his right leg was broken in several places, and his right knee was damaged. Dancy's left hip also was injured.

Two days after the accident, Dr. John Cardea, an orthopaedic surgeon, performed closed reduction surgery to repair fractures of Dancy's left and right tibias and his left femur. Dancy also was treated for crush injuries to both legs, his left ankle, and foot and for internal derangement of his left knee. Because Dancy continued to have pain, Dr. Cardea performed additional surgery. A year later, Dr. Cardea reported that Dancy still had problems with his right ankle and severe problems with his left leg, foot, and ankle.

In 1987, Dr. Cardea suggested that Dancy attempt to return to work. After Dancy worked for six hours, a physician sent him home. When Dancy returned, he worked for only two days because his left leg became swollen and he could no longer stand. Because Dr. Cardea was out of town at the time, Dancy saw a company doctor, who told Dancy he "had no business in that plant to start with." After Dr. Cardea saw Dancy, he opined, "I do not think that he is ever going to return to work under these circumstances."

Following Dancy's failed attempt at work, Dr. Cardea reported that Dancy also had problems with his right leg because

he began "put[ting] all his weight on the right leg and his ankle and leg hurt."  In 1991, Dr. Hallett H. Mathews reported that Dancy "might have more degeneration in his right knee as he takes stress from his left knee."  Dr. Cardea also reported that Dancy "has pain in his right knee which intermittently causes giving way of the knee.  That pain sometimes goes down into his right ankle."

On September 11, 1994, Dr. Cardea completed a disability assessment form.  He opined that Dancy had a one hundred percent disability to his left leg and a fifteen percent disability to his right leg.  Dr. Cardea added that Dancy could not "stand for longer than [one hour], . . . sit for greater than [two hours] at a time, . . . climb, stoop, crawl, work on uneven ground, [or] work in extreme[] . . . [t]emperature[s]."  On June 16, 1995, Dr. Cardea reported that Dancy could work, subject to the restrictions contained in his September 1994 report.

Dancy continued to see Dr. Cardea until a year before the hearing.  Dancy testified that he had most recently been treated by Dr. Prince, his family physician, and Dr. Evans, a vascular surgeon.  Dancy was hospitalized from June 24, 1995 until July 15, 1995 for a variety of health problems, including "cellulitis of the left leg, with [two] ulcerations of the left lateral ankle."  At that time, Dr. Prince stated that Dancy "has had a non-healing ulcer of his left ankle for some time that has failed to respond to conservative outpatient medical management."  Dr.

Prince referred Dancy to Dr. Evans for "aggressive management of his left leg ulcerations."  Dr. Evans reported that Dancy suffered from "arterial occlusion of [the] anterial tibial artery [caused by the] previous trauma," and a "[c]hronic venous insufficiency [caused by the] previous trauma."

Dr. Prince reported that Dancy "suffers with total disability and is unable to engage in any gainful employment as a result of his previous traumatic injuries sustain[ed] in 1985, his current physical condition, previous training and educational background."  Dr. Evans opined that Dancy's medical problems were such that he could lose his left leg.

Dancy testified that he has steel pins in both legs, that his left leg and foot hurt all the time, and that his right leg and knee hurt all the time.  In addition, he testified that his feet and legs still swell after he stands for a while and his hip bothers him when he walks a lot.  He uses a cane to walk.

The record also proved that Dancy had a tenth grade education.  Prior to his employment at Georgia-Pacific, Dancy had been employed in jobs involving physical labor.  He had bagged groceries, pumped gas, and loaded trucks and ships for retailers.  When Dancy served in the U.S. Army, he drove trucks and hauled ammunition and water.

Terry Stacey, a rehabilitation counselor who had met with Dancy in 1992, testified that "recognizing his limited education, his time in the service[,] . . . where he lives, [and] his

- 4 -

medical condition, . . . there were some things, selective work, at least on a part time basis, that he could do for the rest of his life providing that there were no other complications." Stacey stated that Dancy could work at a nursery watering flowers for up to four hours per day, work at a senior citizens' home or a medical clinic as a driver, or work as a "customizer" at a car wash. Stacey testified, however, that he had not reviewed the medical reports in the record from Dr. Prince and Dr. Evans concerning Dancy's current condition.

Following the evidentiary hearing, the deputy commissioner found that Dancy suffered a one hundred percent impairment of his left leg and a fifteen percent impairment of his right leg. He also found that the evidence proved "Dancy cannot use his legs in gainful employment." Thus, the deputy commissioner found that Dancy was permanently and totally disabled and awarded Dancy benefits of $295 per week.

After the deputy commissioner issued his opinion, Georgia-Pacific requested that the commission reopen the record for additional evidence. Georgia-Pacific attached to its request a letter Dr. Prince had written to Dancy's attorney that was dated September 29, 1995, and argued that the letter undermined previous opinions offered by Dr. Prince.

On its review of the deputy commissioner's award, the commission denied Georgia-Pacific's request to reopen the record. The commission also found as follows:

> The record establishes, and

[Georgia-Pacific] does not dispute, that [Dancy] cannot use his left leg in gainful employment. He suffered femur and tibia fractures to this leg, as well as knee injuries, ankle and foot crush injuries, and also vascular diseases relating to circulatory problems in that leg beginning from a time proximate to the accident. The most recent ulcerations at the site of the ankle and foot skin graft areas, which produced conditions that required hospitalization in July 1995, have been reasonably attributed to the work accident. [Dancy's] physicians have also noted that the left leg has atrophied and is used little if any for weight bearing. [Dancy] ambulates by use of a cane and bearing his weight on the right leg. Both Dr. Cardea on December 7, 1987 and Dr. Mathews on June 28, 1988 rated the disability to that leg at 100%, and the record does not show any improvement since 1988. Rather, the medical records show that [Dancy's] left leg condition has even deteriorated since then.

\* \* \* \* \* \* \*

Also, Dr. Cardea on November 5, 1991, and [Dancy] at the evidentiary hearing, reported that his right knee would occasionally give way. We find from the evidence that [Dancy] suffers a permanent injury to his right leg, albeit less serious than the left, and that the combination of the two leg injuries renders him unemployable.

The commission found that the evidence proved a rated loss to both legs and that Dancy cannot use his legs in gainful employment. Accordingly, the commission affirmed the award.

## II.

Georgia-Pacific first argues that the commission erred, as a matter of law, in failing to make a separate finding that Dancy suffered a permanent loss of use of his right leg. We disagree.

Code § 65.2-503 provides, in pertinent part, as follows:

C.  Compensation shall be awarded pursuant to § 65.2-500 for permanent and total incapacity when there is:

1.  Loss of both hands, both arms, both feet, both legs, both eyes, or any two thereof in the same accident.

\*    \*    \*    \*    \*    \*    \*

D.  In construing this section, the permanent loss of the use of a member shall be equivalent to the loss of such member, and for the permanent partial loss or loss of use of a member, compensation may be proportionately awarded.

"[I]n determining the extent of the loss of use of two members, the inability of the injured employee to engage in gainful employment [is] a proper element to . . . consider[]." Virginia Oak Flooring Co. v. Chrisley, 195 Va. 850, 858-59, 80 S.E.2d 537, 542 (1954).  Indeed, this Court has held that "[t]he evidence of a rated loss of twenty-five percent of both legs, coupled with the additional evidence of [the employee's] incapacity for employment, supports the commission's finding that the employee is permanently unemployable as a consequence of [the] loss of function in both legs."  Pantry Pride - Food Fair Stores, Inc. v. Backus, 18 Va. App. 176, 180, 442 S.E.2d 699, 702 (1994).

The medical evidence in this record proved that Dancy had a rated loss of one hundred percent and fifteen percent, respectively, of his left and right legs.  The commission found from credible evidence in the record that "the combination of the

two leg injuries render[ed Dancy] unemployable." The commission was not required to make separate findings that each leg is unusable in employment. See id. Rather, the proper inquiry was whether the rated loss of use in Dancy's legs rendered both of Dancy's legs effectively unusable. Accordingly, we hold that the commission did not err in basing its ruling of permanent and total incapacity on the combined effect of the injuries to both of Dancy's legs. See id.

### III.

Georgia-Pacific next argues that the evidence was insufficient to prove that Dancy could not use his right leg in employment. Because we have held that this separate finding is not necessary and that Dancy needed to show only that the combined effect of the injuries to both of his legs rendered his legs unusable, this argument has no merit.

The evidence was sufficient to support the commission's finding that the combination of the two leg injuries rendered Dancy's legs unusable. "Findings of fact made by the commission are binding on this court if they are supported by credible evidence." Pantry Pride, 18 Va. App. at 180, 442 S.E.2d at 702. Dr. Cardea's disability rating supports the commission's finding that Dancy had a one hundred percent disability in his left leg and a fifteen percent disability in his right leg. Moreover, the commission's finding that Dancy was unemployable was supported by the reports of Dr. Prince, who stated that Dancy was "unable to

engage in any gainful employment."

Although Dr. Cardea's earlier report indicated that Dancy could work subject to numerous restrictions and Stacey identified types of jobs that allegedly could satisfy the restrictions, the commission found that "Stacey did not represent that . . . such jobs [were] available." The commission also found that complying with Dr. Cardea's restrictions "would require extraordinary accommodation by an employer." Furthermore, Stacey's testimony did not take account of the contrary disability opinions of Dr. Prince and Dr. Evans.

Moreover, credible evidence supports the commission's decision giving Dr. Cardea's disability conclusions "little probative weight." The record contains "no evidence that [Dr. Cardea] has seen [Dancy] since September 11, 1994." Because "[t]he credibility of . . . expert witness[es] and the weight to be accorded the evidence [are] matters within the province of the [fact finder]," Horsley v. Commonwealth, 2 Va. App. 335, 339, 343 S.E.2d 389, 391 (1986), we cannot disturb the commission's decision to rely on Dr. Prince's opinion that Dancy was unemployable. The commission's findings are supported by credible evidence. See Pantry Pride, 18 Va. App. at 180-81, 442 S.E.2d at 702.

IV.

Finally, Georgia-Pacific contends that the commission erred in refusing to reopen the record for consideration of a letter

- 9 -

from Dr. Prince.  We disagree.

> The standard for reviewing petitions to reopen the record to receive after-discovered evidence is the same before the commission as it is before a trial court. . . .  The four requirements which must be met before the record will be reopened on the basis of after-discovered evidence are that: (1) the evidence was obtained after the hearing; (2) it could not have been obtained prior to [the] hearing through the exercise of reasonable diligence; (3) it is not merely cumulative, corroborative or collateral; and (4) it is material and should produce an opposite result before the commission.

Williams v. People's Life Ins. Co., 19 Va. App. 530, 532, 452 S.E.2d 881, 883 (1995) (emphasis omitted) (citations omitted).

The document offered by Georgia-Pacific is a letter from Dr. Prince, dated September 29, 1995, which was written in response to a request from Dancy's counsel for an update of Dancy's status.  In the letter, Dr. Prince reiterated his opinion that Dancy "suffers with total disability and is unable to engage in any gainful employment as a result of his previous traumatic injuries sustain[ed] in 1985."  He also stated that a "permanent total disability assessment should be performed by those engaged in functional capacity evaluation."  Georgia-Pacific argued that Dr. Prince had thereby admitted that he was not trained to make an evaluation of Dancy's employability.

In denying the request, the commission found, in pertinent part, as follows:

> It does not appear that this document contains any significant new medical information, only a summary of [Dancy's] treatment and [Dr. Prince's] opinion

– 10 –

regarding his condition when last seen. It is essentially the same information that may be obtained from the office notes of Dr. Prince that were timely filed with the Commission and are complete through September 26, 1995, only one week before the hearing. [Georgia-Pacific's] bare statement that the information in the September 29, 1995 report is not cumulative, corroborative, or collateral is not supported by the record.

Moreover, the information contained therein was clearly available to either party before the hearing, and counsel has not explained why [Georgia-Pacific] could not have obtained it through due diligence. There is no evidence and [Georgia-Pacific] does not argue that it attempted to independently obtain this information, but appears to argue that its own lack of effort should be excused because [Dancy] did not diligently seek a prompt response to his request for information. We find no merit to that argument. We also find no basis for [Georgia-Pacific's] suggestion that the report was intentionally delayed by conduct of [Dancy's] counsel. Moreover, Dr. Prince's stated opinion in the September 29, 1995 report is supportive and corroborative of [Dancy's] theory of the case, making such a suggestion illogical and unreasonable.

Upon consideration of the document and arguments presented, we conclude that the September 29, 1995 medical report is not of such character as would produce a different result on the merits; is merely cumulative, corroborative, and collateral; and is evidence that could have been obtained and presented before the hearing by the exercise of due diligence of either party.

The record supports all of those findings. We therefore conclude that the commission did not abuse its discretion in denying the request. See Old Dominion Elec. Coop. v. Virginia Elec. and Power Co., 237 Va. 385, 394-98, 377 S.E.2d 422, 427-29

- 11 -

(1989).

For these reasons, we affirm the commission's award.

Affirmed.