COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Elder and
          Senior Judge Overton
Argued at Alexandria, Virginia


TOWN OF PURCELLVILLE POLICE AND
 VIRGINIA MUNICIPAL GROUP
 SELF-INSURANCE ASSOCIATION
                                         OPINION BY
v.    Record No. 2335-00-4            JUDGE LARRY G. ELDER
                                        APRIL 10, 2001
MARTIN P. BROMSER-KLOEDEN


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Ralph L. Whitt, Jr. (Whitt & Associates, on
          briefs), for appellants.

          Charles W. O'Donnell for appellee.


     The Town of Purcellville Police and the Virginia Municipal

Group Self-Insurance Association (collectively employer) appeal

from a ruling of the Workers' Compensation Commission

(commission) awarding temporary disability benefits to former

Purcellville Police Officer Martin P. Bromser-Kloeden

(claimant).  On appeal, employer contends the commission

erroneously applied the presumption of Code § 65.2-402(B) to

award claimant benefits for a form of heart disease which the

commission found was caused by a virus.  Employer argues first

that application of the presumption is unconstitutional in this

case under Fairfax County Fire & Rescue Services v. Newman, 222

Va. 535, 281 S.E.2d 897 (1981), both because no "natural and

rational nexus" exists between claimant's employment and the virus and because the presumption is "for all practical purposes" irrebuttable.  Second, it argues that even if the presumption may be constitutionally applied, employer's evidence rebutted the presumption because the virus which led to claimant's heart disease is "community acquired" and, therefore, inherently non-work-related.

We hold that application of the presumption to claimant's virally induced heart disease, coupled with evidence that work-related stress made claimant more susceptible to the virus and resulting heart disease, is constitutional under Newman. Further, we conclude the evidence that claimant's heart disease resulted from a virus did not prove a non-work-related cause of the heart disease sufficient to rebut the presumption because the evidence supported a finding that claimant could have contracted the virus, and more probably than not did contract it, through work-related exposure and that claimant's job stress increased his susceptibility to the virus.  Thus, the evidence supports the commission's conclusion that employer failed to prove a non-work-related cause, and we affirm the award of benefits.

## I.

## BACKGROUND

Claimant was born in 1960 and began working as a police officer for employer in 1990 after passing a pre-employment

-

physical.  He performed general law enforcement duties, including responding to 911 calls and other calls for service, dealing with drunks, making traffic stops and arrests, serving warrants, and assisting the rescue squad with "sick person" calls.  During the course of his duties, he was required to clean up bodily fluids, such as urine and vomit, left in his police car by people he was transporting.  He also experienced incidents in which offenders spit on him.  In the course of arresting people, he often performed full-body pat-down searches with his bare hands.  The number of disorderly conduct and drunk-in-public offenses increased in the summer months, requiring claimant to make more arrests and transport more offenders during that time frame.

   During July 1997, claimant had a "very strong sore throat," which he thought was "unusual" for the summer months.  No one else in his immediate family was sick during that period of time.  On September 2, 1997, claimant saw his family practitioner, Dr. Hegerich, because he was feeling "lousy." Dr. Hegerich diagnosed claimant as having cardiomyopathy, an injury to the heart muscle which results in stretching and less efficient pumping, and he opined that its cause was "either viral or idiopathic."  While claimant was hospitalized for his condition, Dr. Dean Pollock, a cardiologist, diagnosed idiopathic cardiomyopathy with an onset date of September 2,

1997.  Dr. Pollock eventually told claimant he would be unable to return to work as a police officer.

On February 3, 1999, claimant saw Dr. Richard Schwartz, a cardiologist.  After examining claimant and reviewing his medical records, Dr. Schwartz diagnosed claimant as having dilated cardiomyopathy complicated by atrial fibrillation.  Dr. Schwartz rendered the following opinion:

> Of the four major etiologic correlates for dilated myopathy, excessive alcohol, excessive hypertension, pregnancy and post viral, only the latter would seem to be a reasonable explanation for this police officer's problem.  In my experience, police officers are exposed to a wide variety of populations and environmental conditions.  These would predispose [claimant] to viral infections, as would any occupation dealing with broad exposures to the general public.  Moreover, [claimant's] stressful occupation would render [him] more susceptible to viral as well as other infectious processes.  Therefore, it would appear that the most reasonable explanation for [claimant's] cardiomyopathy is that it is post-viral, more likely than not, occurring as a result of his occupation.

Dr. Schwartz opined that the sore throat claimant experienced in July 1997 was a common manifestation of a virus and that cardiomyopathy resulting from a virus typically manifests itself four to six weeks later.  Therefore, he testified, the September 1997 diagnosis of virally induced cardiomyopathy was consistent with the July 1997 symptoms claimant had described.  Because claimant had run a marathon in June 1997, Schwartz believed claimant did not have

-

cardiomyopathy at that time.  Dr. Schwartz opined that "it's probably a community acquired infection," a "droplet spread infection," and that claimant's work "in close proximity of individuals" made him "more likely to acquire a viral illness if somebody else has it."  Dr. Schwartz testified that he had ridden with patrol officers and observed them making arrests. He opined that the close contact occurring during such encounters was of the type that would render patrol officers more susceptible to contracting droplet spread infections.  Dr. Schwartz testified that he was unable "to rule out viral exposure from [claimant's] work place as a police officer as the source of the virus that caused his heart condition."

Dr. Pollock agreed with Dr. Schwartz's opinion of causation, opining that claimant had none of the presumptive risk factors for heart disease and, therefore, that claimant's cardiomyopathy was most likely caused by a viral infection contracted within the six-to-eight-week period prior to claimant's September 1997 hospital admission.

Employer offered the written opinion of Dr. Michael Hess, a cardiologist who reviewed claimant's medical records but did not examine him.  Dr. Hess responded "emphatically no" to the question whether claimant's job contributed to his heart condition because "police officers are not the only profession 'exposed to a wide variety of populations and environmental conditions'" and "[t]here is not firm evidence that any

-

particular virus that [claimant] would be exposed to in his occupation as a police officer would cause his cardiomyopathy." He also disputed Dr. Schwartz's claim that job stress made claimant more susceptible to viruses and opined that his cardiomyopathy "more than likely is a genetic defect."

Dr. Schwartz disputed Dr. Hess's opinion, noting that he excluded other potential causes of claimant's cardiomyopathy by history, physical examination and laboratory studies. Dr. Schwartz noted that testing was available to determine whether the cause of claimant's ailment was genetic but that no such testing had been done.

The commission expressly rejected as speculative Dr. Hess's opinion that claimant's cardiomyopathy was caused by a genetic defect. On that basis, it concluded that employer failed to offer "any credible non-work related causes of the claimant's condition" and, therefore, had failed to rebut the statutory presumption that claimant's heart condition was compensable. The commission also rejected employer's contention that application of the presumption was unconstitutional under the facts of the case.

II.

ANALYSIS

The commission's "finding based upon conflicting expert medical opinions is one of fact which cannot be disturbed." Dep't of State Police v. Talbert, 1 Va. App. 250, 253, 337

-

S.E.2d 307, 308 (1985). "On review, we determine whether the evidence was sufficient to support the finding of fact reached by the [c]ommission, not whether the evidence was sufficient to have supported a contrary finding." Id. at 254, 337 S.E.2d at 309.

Based on these principles, employer concedes, as it must, that the commission was free to reject Dr. Hess's opinion regarding a genetic cause for claimant's disease and to accept Dr. Schwartz's opinion that it was viral in origin. Employer contends, however, that this finding actually requires the conclusion that the presumption was rebutted because a virus is inherently non-work-related. Thus, it contends, application of the presumption under these facts is unconstitutional. Employer further contends if the presumption is not unconstitutional, evidence that the causative virus was "community acquired" is sufficient to establish both that a non-work-related cause of the disease existed and that the disease was not caused by claimant's employment. In sum, employer's position hinges on its argument that a disability caused by an ordinary virus which may or may not have been contracted at work is a non-work-related cause sufficient to render application of the presumption unconstitutional or at least to rebut the presumption. For the reasons that follow, we reject these contentions and affirm the commission's award.

-

The Workers' Compensation Act (the Act) provides that an ordinary disease of life to which the general public is exposed outside of the employment generally is not covered by the Act unless a claimant can prove by clear and convincing evidence, inter alia, that the disease arose out of and in the course of employment and did not result from causes outside the employment. Code § 65.2-401. However, under Code § 65.2-402, a heart disease incurred by a police officer which results in total or partial disability is "presumed to be [an] occupational disease[], suffered in the line of duty, that [is] covered by [the Act] unless such presumption is overcome by a preponderance of competent evidence to the contrary." Code § 65.2-402(B). "In order to establish a prima facie case, the claimant need only prove his occupation and his disability from one of the diseases identified by statute. The presumption [then] shifts the burden of going forward with the evidence from the claimant to the employer." City of Norfolk v. Lillard, 15 Va. App. 424, 427, 424 S.E.2d 243, 245 (1992).

In order to rebut the presumption, employer must prove by a preponderance of the evidence both that (1) the claimant's disease was not caused by his employment and (2) a non-work-related cause of the disease existed. Bass v. City of Richmond Police Dep't, 258 Va. 103, 115, 515 S.E.2d 557, 563 (1999). "When the commission determines that the employer has failed to overcome the statutory presumption, the claimant is

-

entitled to an award of benefits." <u>City of Portsmouth Sheriff's Dep't v. Clark</u>, 30 Va. App. 545, 552, 518 S.E.2d 342, 345 (1999).

## A.

### CONSTITUTIONALITY OF PRESUMPTION IN CLAIMANT'S CASE

The Virginia Supreme Court examined the constitutionality of a similar presumption applied to firefighters in <u>Newman</u>, 222 Va. at 539-41, 281 S.E.2d at 900-01, finding its application did not violate the employer's due process rights under the facts of that case. Quoting its earlier decision in <u>Crenshaw v. Commonwealth</u>, 219 Va. 38, 42, 245 S.E.2d 243, 246 (1978), it held that for the application of such a presumption to be constitutional, "(1) a 'natural and rational' evidentiary nexus must exist between the fact proved and the fact presumed and (2) the presumption must be rebuttable." <u>Newman</u>, 222 Va. at 539-40, 281 S.E.2d at 900.

Applying the first prong of the test, it held as follows:

> The legislature knew that the causes of pulmonary and cardiac diseases are unknown and that the medical community is split regarding the impact of stress and work environment on these diseases. Fire fighters, in the course of their duties, often inhale smoke, noxious fumes and other harmful pollutants and, hence, are particularly vulnerable to respiratory diseases. The legislature's conclusion that a fire fighter who contracts a respiratory disease after he has started work suffers from an occupational disease is a reasonable and logical deduction. Thus, a "natural and

-

> rational nexus" exists between the
> occupation and the disease.

Id. at 540, 281 S.E.2d at 900.   Because the issue involved "economic regulation based on information unavailable to [the] court," it concluded that "the legislature's determination that a rational connection exists should be accorded great weight." Id. at 540, 281 S.E.2d at 901.

Applying the second part of the test, the Court rejected the employer's contention that the presumption was "essentially irrebuttable because the etiology of pulmonary sarcoidosis[, the respiratory ailment from which the claimant Newman was suffering,] [was] unknown." Id. at 541, 281 S.E.2d at 901.

> It is of no constitutional significance that
> the present state of medical science and the
> healing arts places a greater burden on the
> employer. . . . As long as the employer [is
> free to] introduce evidence in rebuttal of
> the presumption, the employer's
> constitutional rights of due process have
> been protected.  The absence of evidence
> [due to medical science's lack of
> understanding of the causes of the specified
> ailment or the difficulty in obtaining such
> evidence] is a problem of proof and does not
> automatically make the presumption
> irrebuttable.

Id.

In claimant's case, a "natural and rational nexus" exists between law enforcement occupations and heart disease in general.  Id. at 540, 281 S.E.2d at 900.  As the Court observed in Newman, the primary causes of many cardiac diseases are unknown, and the medical community is split regarding the impact

-

of stress and work environment on these diseases.  Id.; see also, e.g., Clark, 30 Va. App. at 553-56, 518 S.E.2d at 346-47 (discussing "risk factors" for coronary artery disease and noting absence of evidence of definitive causes of such disease); City of Richmond Fire Dep't v. Dean, 30 Va. App. 306, 312, 516 S.E.2d 709, 712 (1999) (noting that twenty to thirty percent of "heart block" cases are of unknown origin); Duffy v. Dep't of State Police, 22 Va. App. 245, 247, 468 S.E.2d 702, 703 (1996) (noting evidence that stress contributed to development of police officer's coronary artery disease).  The jobs of law enforcement officers, like firefighters, are often stressful. Because at least some members of the medical community believe stress is a factor in the development of heart disease, a natural and rational nexus exists between the occupation and the disease, rendering Code § 65.2-402(B) constitutional on its face.

Further, a "natural and rational nexus" exists between claimant's duties as a police officer and cardiomyopathy, the specific heart disease from which he suffers.  Although some of the evidence was conflicting, claimant presented testimony accepted by the commission that his virally induced cardiomyopathy was work-related because it was more likely than not that he contracted it during close interpersonal contact required by his employment and because the stress inherent in his job made him more susceptible to contracting the virus.

-

Thus, although heart disease that is virally induced may be unusual, a "natural and rational" nexus exists between the presumption and the fact to be proved under the facts of this case.

Finally, the presumption was not irrebuttable under the facts of this case. Here, as in Newman, employer's inability to rebut the presumption resulted from the shortcomings of medical science, i.e., the difficulties inherent in trying to pinpoint the precise source from which one has contracted a virus and in determining the impact of job stress on the ability of one's immune system to resist such a virus. The employer's difficulties in rebutting the presumption did not result from an evidentiary rule which, "for all practical purposes," excluded relevant evidence, which was the case with the presumption found unconstitutional in Crenshaw, 219 Va. at 42, 245 S.E.2d at 246.

Thus, application of the presumption was not unconstitutional under the facts of this case.

B.

VIRUS AS NON-WORK-RELATED CAUSE OF HEART DISEASE

For similar reasons, we affirm the commission's decision that employer failed to rebut the presumption. The legal principles are simple. Claimant established a prima facie case of coverage by proving he was a police officer and that he experienced a disability resulting from heart disease. Lillard, 15 Va. App. at 427, 424 S.E.2d at 245. The burden then shifted

-

to employer to prove by a preponderance of the evidence both that (1) the claimant's disease was not caused by his employment and (2) a non-work-related cause of the disease existed.  Bass, 258 Va. at 115, 515 S.E.2d at 563.  Employer failed to meet that burden.

The commission found, as employer concedes it was entitled to do, that claimant's heart disease was caused by a virus.  The mere fact that claimant could have contracted the virus which caused his cardiomyopathy from a source unrelated to his employment is insufficient to establish the cause was, in fact, non-work-related.  Further, evidence before the commission indicated that the nature of claimant's work as a police officer in fact increased his risk of contracting the type of "community acquired" virus which caused his heart condition because it both (1) placed him in greater contact with the public and with their various bodily fluids and (2) increased the overall level of stress in his life, thereby rendering him more susceptible to all viruses.

In arguing the constitutional question on brief, employer concedes that even without the presumption, a claimant may establish a connection between his employment and "all manner of viruses and bacterial infections."  Thus, employer's contention that the unknown, "community acquired" virus which caused claimant's cardiomyopathy was inherently non-work-related is disingenuous.  Carried to its logical extreme, employer's

-

argument would prevent coverage for any disability resulting from a virus spread among the general population, even if a claimant could prove the required nexus between the virus and his employment.  If the legislature had wished to exclude from the coverage of the presumption those forms of heart disease with known causes or viral causes, it could have done so, but it did not.  Thus, we conclude credible evidence supports the commission's decision.

For these reasons, we hold that application of the presumption of Code § 65.2-402(B) was constitutional under the facts of this case and that credible evidence supports the commission's conclusion that employer failed to rebut the presumption.  Therefore, we affirm the commission's award of benefits.

<u>Affirmed.</u>

-