COURT OF APPEALS OF VIRGINIA


Present:   Judges Powell, Alston and Senior Judge Annunziata
Argued at Alexandria, Virginia


VIRGINIA DEPARTMENT OF TRANSPORTATION/
  COMMONWEALTH OF VIRGINIA
                                              MEMORANDUM OPINION[*] BY
v.       Record No. 1410-10-4                 JUDGE ROSSIE D. ALSTON, JR.
                                                    MARCH 8, 2011
MARION FRANKLIN SHAFFER


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Scott John Fitzgerald, Senior Assistant Attorney General (Kenneth T.
            Cuccinelli, II, Attorney General; Wesley G. Russell, Jr., Deputy
            Attorney General; Peter R. Messitt, Senior Assistant Attorney
            General, on brief), for appellant.

            Diane C. H. McNamara for appellee.


        Commonwealth of Virginia/Department of Transportation (employer) contends that the

Workers' Compensation Commission (the commission) erred in awarding Marion Franklin

Shaffer (claimant) permanent total disability benefits.  Specifically, employer argues that the

commission erred because 1) the claimant improperly relied on disability ratings that were based

on both work-related and non-work-related conditions without apportionment; and 2) the

evidence in this case showed that claimant could not return to his previous employment, but

claimant failed to present evidence that showed that he could not use his legs in *any*

employment.  We hold that there is credible evidence that claimant's disability was caused by a

1999 compensable injury and that claimant was unable to use his legs in any employment, and

for the following reasons, we affirm the decision of the commission.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

On April 12, 1999, claimant, who was employed as a transportation crew-member, suffered an injury while at work. Claimant and a co-worker were erecting a large aluminum warning sign when a gust of wind blew the sign over. Claimant attempted to keep the sign upright, and during this effort, his back bent until he felt it "pop." Claimant was forty-three years old at the time of the accident.

After years of treatment and several awards of disability benefits by the commission, claimant filed an application for an award of permanent disability benefits in 2008. In July 2009, claimant testified in support of his claim for permanent total disability payments before the deputy commissioner. He testified that the use of his legs was drastically affected by the 1999 injury. Claimant testified that his ability to walk was negatively impacted by the injury and that he sometimes could not walk more than one hundred feet. He further testified that he "can't walk right anymore. [He] can't lift anything. [He had] a real hard time bending over and lifting things." He also testified that the 1999 injury affected his ability to stand comfortably. He testified that he could comfortably stand for between twenty and thirty minutes, after which time his back began to spasm. Additionally, claimant stated that he sometimes lost feeling from the waist down. According to claimant, on one occasion his legs failed to support him while he was pumping gas, which caused him to fall and break his ribs.

Claimant also testified that his injury limited his ability to sit for extended periods of time. He stated that he could not sit for longer than forty-five minutes and that sometimes, he "can't sit for five minutes without getting numb." He estimated that he could sit between fifteen and thirty minutes on average before needing to change his position. Claimant also stated he found lying down, squatting, and driving to be difficult and uncomfortable. More particularly, it was noted that during the hearing before the deputy commissioner, claimant experienced

numbness in his legs and feet, back pain, and spasms in his calves. The record reflects that he alternated between sitting and standing throughout the hearing.

On appeal, employer argues that claimant's disability is related to a 1996 workplace accident. In 1996, claimant was working for employer when a truck door hit him in the back, resulting in a compensable injury. At the hearing on his most recent injury, claimant testified that he missed a few days of work after the 1996 accident and attended physical therapy for nine months; however, claimant also stated that he resumed unrestricted work activities and worked in a heavy-duty capacity until the 1999 accident. He testified that the 1996 accident did not affect his everyday life, while the 1999 accident greatly limited his abilities to the extent described above. Claimant's mother also testified at the hearing before the deputy commissioner regarding the 1999 accident, and her testimony corroborated claimant's claims.

Additional medical evidence was presented to the deputy commissioner on claimant's request for permanent total disability benefits. In this regard, there was evidence that claimant suffered from depression prior to both the 1996 and 1999 injuries. The evidence suggested that this depression was related to the death of his wife. However, claimant reported that after the 1999 injury, he began to experience anxiety attacks.

An October 1999 Functional Capacity Evaluation noted that claimant's pre-injury work was classified as "very heavy" physical demand. It reflected that claimant was then only capable of four hours per day of sedentary work, despite evidence of symptom magnification. The evaluation also stated that claimant had functional deficits that included lifting, carrying, walking, climbing, sitting, and standing.

A November 1999 report by Dr. Robert Squillante, an orthopedic specialist who had treated claimant since 1996, was also admitted into evidence. Dr. Squillante suggested that claimant's back pain could be related to his L5-S1 spondylolisthesis caused by the 1999

accident, but he also opined that if claimant lost one hundred to one hundred twenty-five pounds, his pain would be alleviated.

The record before the deputy commissioner reflected that in February 2000, an award order was entered, awarding claimant temporary total disability benefits beginning on April 13, 1999. Pursuant to this award, 500 weeks of temporary total disability benefits were paid through November 10, 2008.

As part of the medical evidence considered in reaching his conclusion, the deputy commissioner also considered a June 2, 2000 Progress Note, authored as part of claimant's treatment at Virginia Pain Management, noting a four-year history (i.e., since 1996) of low back pain radiating mainly to the right hip and sometimes extending from claimant's thigh to his foot. An assessment dated five days later from the Sheltering Arms Department of Physical Medicine and Rehabilitation reflected that claimant claimed his symptoms began in 1996. On June 13, 2000, a doctor's notes from a biofeedback session showed that claimant had been "extremely frustrated with pain for three years . . . ."

Additional medical evidence before the deputy commissioner revealed that on September 21, 2005, Dr. Thomas Schuler, of the Virginia Spine Institute, performed an independent medical examination. He noted claimant's 1996 injury in his notes. After reviewing the 1999 MRI films, the doctor observed, "There is herniation at L5/S1. Subarticular stenosis is seen." Upon reviewing x-rays of claimant's pelvis, Dr. Schuler further commented, "There is 50% to almost 70% collapse seen at the L5/S1 level." Dr. Schuler further commented that claimant could be capable of full-time light-duty work. He stated that claimant's ability to perform "heavy work" was limited by his obesity and conditioning, rather than the low back strain. He diagnosed claimant with a number of conditions, including spondylolisthesis, lumbar disc degeneration, lumbar disc herniation, cervical disc herniation, and cervical disc degeneration. He

recommended an MRI of the neck and lower back, lumbar discography, and aggressive rehabilitation. Dr. Schuler stated that he did not expect to "solve [claimant's] problem," but he did expect to optimize claimant's health and recovery. Finally, Dr. Schuler noted,

> I also believe that the spondylolisthesis predated his work-related injury, but based upon the history provided to me, this was made symptomatic by the work-related injury. . . . Based upon the information available to me today, I do believe that his current problems are directly related to the work-related injury of 1999, and that he still needs to have appropriate treatment. If there is information to the contrary, then I would be willing to review and reconsider my opinions rendered today.

On June 5, 2008, Dr. Bryngelson, a chiropractor, assessed claimant and stated, "The patient is in a chronic stage arising from a lifting type injury in 1999 while at work," and "[claimant] is unable to perform his usual work duties and is permanently disabled." Dr. Squillante's physician's assistant, Heather Brown, had referred claimant to Dr. Bryngelson. That same month, Dr. Squillante again evaluated claimant. At the hearing, claimant testified that Dr. Squillante had treated him two or three times after his accident, but after those appointments, the doctor's physician's assistant had treated him. Claimant stated that Dr. Squillante did not recognize claimant at the June 2008 appointment and that the doctor left the room without performing an examination or evaluation. However, Dr. Squillante did fill out a medical questionnaire regarding claimant's health after claimant's appointment. He indicated that claimant had reached maximum medical improvement, with "[n]o extremity impairment." He did not articulate an explanation for this rating. He left blank questions about claimant's restrictions, future need for treatment or surgery, the cost of future treatment or surgery, and the period of recovery anticipated in the event of surgery.

On October 13, 2008, Dr. Aldo Rosemblat, an independent physician hired by claimant, evaluated claimant. Dr. Rosemblat diagnosed claimant with ten different diagnoses, including major depression, lumbar pain, chronic SI joint and pelvic dysfunction, bilateral shoulder

tendonitis, hypertension, L5-S1 spondylolisthesis with discogenic and radicular pain, cervical spondylosis, and obesity. He estimated that claimant had a 22% impairment to the right leg and a 20% impairment to the left leg, but he did not identify the source of the disabling pain. He further gave claimant a 30% whole body rating based on his depression. Dr. Rosemblat indicated that claimant was

> totally disabled for the performance of his previous job. This is related to his work related injury of 04/12/1999. If all the other accompanying problems are not resolved, he cannot be rehabilitated in a sedentary, clerical or light duty job. The main reasons are persistent depression, mechanical pain and the inability to focus and concentrate in tasks due to the pain clouding his attention span. He is considered totally disabled by this examiner at present.

On November 10, 2008, claimant received his last award for temporary total disability pursuant to the February 9, 2000 award order. Claimant filed an application for hearing on December 16, 2008, seeking an award of permanent disability.

Dr. Ian Gordon saw claimant one time in February 2009 at claimant's request. He obtained claimant's medical history, reviewed claimant's medical records, performed a physical examination, and performed a permanent impairment rating. In his report, he opined that claimant's "work ability is limited to sedentary work, which he cannot do for more than 3 hours per day." He assigned impairment ratings of 7% for hip extension weakness; 10% for hip abduction weakness; 2% for ankle dorsiflexion weakness, ankle eversion, and great toe extension weakness, for a total of 23% impairment due to lower extremity muscle weakness. He assigned a "15% whole person disability related to station and gait . . . and a total disability rating of 42% whole body impairment in relation to his legs." In response to a February 24, 2009 medical questionnaire, Dr. Gordon stated that claimant had an 82% right lower extremity permanent impairment and a 20% left lower extremity permanent impairment as a result of the 1999 workplace accident.

On May 21, 2009, Dr. Bryngelson responded to a medical questionnaire provided to him by claimant's counsel. He indicated that claimant had reached maximum medical improvement. He agreed with the permanent impairment ratings assigned by both Drs. Gordon and Rosemblat, commenting that the disparity between the right and left leg ratings is a function of the "bad day-good day" phenomenon, where there are some days when "pain is exacerbated and when it is settled." Dr. Bryngelson stated that claimant was not able to use his legs for gainful employment. He found that this disability was causally related to the 1999 workplace accident and noted that prior to the 1999 accident, claimant was able to lead a normal life and now claimant is "unable to get through a day without pain. His spine was injured along with the nerves that control function of his extremities." With respect to claimant's physical capacity, Dr. Bryngelson stated,

> [Claimant] is unable to perform any repetitive tasks, [activities of daily living] such as sitting, standing, and walking should be brief and varied[.] [T]his includes driving limited to forty-five minutes. Lifting is limited to ten pounds and only performed occasionally. Concentration is also effected [sic] which will limit his ability to perform thoughtful tasks or jobs.

He further opined, "Based on my observance of [claimant] over the last year[,] his disability is never at zero percent. Therefore, I disagree with Dr. Squillante's assessment."

The hearing before the deputy commissioner was held on July 30, 2009. Dr. Larry Sinsabaugh, a vocational rehabilitation expert, testified at claimant's request. He stated that he had reviewed claimant's post-1999 medical records, but had "very little information about" the 1996 injury to claimant's back. In fact, he did not even know if the 1996 and 1999 injuries were to the same body parts. He admitted that he did not test claimant's pain levels or ask him to complete a "pain questionnaire" during the physical examination and that his conclusions were based primarily on claimant's medical records and various medical studies. Dr. Sinsabaugh placed great weight on the significant permanent partial impairment ratings assigned to the left

and right lower extremities by Dr. Rosemblat's October 2008 report and Dr. Gordon's February 2009 evaluations. He did not attribute any weight to Dr. Squillante's June 2008 report "in the context of [the] other medical records."

Dr. Sinsabaugh testified that "sedentary work" was distinguishable from "sedentary activities." He stated that although claimant is capable of sedentary activities, such as attending the deputy commissioner's hearing, he was incapable of sedentary work, which was done on a consistent basis. Dr. Sinsabaugh testified that while Dr. Gordon indicated claimant could perform not more than three hours of sedentary *work* in a day, Dr. Sinsabaugh believed that claimant could not consistently perform sedentary activities so that he could maintain a regular schedule and employment. Dr. Sinsabaugh further acknowledged there were sedentary jobs that claimant could perform, but stated that claimant had no prior experience in those jobs. He opined that claimant did not have the ability to use his lower extremities in work that he had performed in the past or had been reasonably well trained to perform. Generally, Dr. Sinsabaugh concluded that claimant was not employable because of his depression, pain, and limitations on sitting, standing, walking, and strength.

After considering claimant's medical records and the testimony of claimant, claimant's mother, and Dr. Sinsabaugh, the deputy commissioner, in a letter opinion dated October 5, 2009, terminated the award for temporary total disability benefits and awarded permanent total disability benefits beginning November 11, 2008, and continuing for life. The commission affirmed this opinion. This appeal followed.

## II. ANALYSIS

### A. Causal relationship between workplace injury and claimant's disability

Employer argues on appeal that claimant's disability is not entirely the result of the 1999 accident; rather, employer argues that the commission should have reached the conclusion that

claimant's disability results from some combination of claimant's 1996 accident, 1999 accident, his wife's death, and his weight problem.

On appeal, we construe the evidence in the light most favorable to the party prevailing below. R. G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). The commission's findings of fact on the issue of causation will be upheld if supported by credible evidence. City of Norfolk v. Lillard, 15 Va. App. 424, 430, 424 S.E.2d 243, 246 (1992) (citing Ingersoll-Rand Co. v. Musick, 7 Va. App. 684, 688, 376 S.E.2d 814, 817 (1989)). "'The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the Commission's finding.'" Id. (quoting Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991)).

"Causation of a medical condition may be proved by either direct or circumstantial evidence, including medical evidence or 'the testimony of a claimant.'" Farmington Country Club v. Marshall, 47 Va. App. 15, 26, 622 S.E.2d 233, 239 (2005) (quoting Dollar Gen. Store v. Cridlin, 22 Va. App. 171, 176, 468 S.E.2d 152, 154 (1996)). "'Medical evidence is not necessarily conclusive, but is subject to the commission's consideration and weighing,'" Cridlin, 22 Va. App. at 176, 468 S.E.2d at 154 (quoting Hungerford Mech. Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 215 (1991) (addressing evidence used to establish percentage of incapacity suffered by employee)), and the commission may consider a claimant's testimony in its determination of causation, "especially where the medical testimony is inconclusive," id. (citing Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 281, 348 S.E.2d 876, 878 (1986)). To this end, this Court has held,

> "To appraise the true degree of indispensability which should be accorded medical testimony, it is first necessary to dispel the misconception that valid awards can stand only if accompanied by a definite medical diagnosis. True, in many instances it may be impossible to form a judgment on the relation of the employment to the injury, or relation of the injury to the disability, without

analyzing in medical terms what the injury or disease is. But this is not invariably so. In appropriate circumstances, awards may be made when medical evidence on these matters is inconclusive, indecisive, fragmentary, inconsistent, or even nonexistent."

Id. at 177, 468 S.E.2d at 154-55 (quoting 2B Arthur Larson, The Law of Workmen's Compensation § 79.51(a) (1995)).

The commission clearly considered claimant's medical records, as it provided an extensive summary of this evidence in its letter opinion. Like the deputy commissioner, the commission found Dr. Sinsabaugh's opinion persuasive and relied on the impairment ratings and the restrictions provided by Dr. Gordon. Furthermore, the commission noted that the "[d]eputy [c]ommisioner recognized that Dr. Squillante had been [the claimant's] treating physician, but noted that he had not examined the claimant at the time he rendered his opinion regarding impairment and had not personally examined him in some time." As such, the commission discounted Dr. Squillante's opinion regarding causation and credited Dr. Gordon's finding that claimant's disability was related to the 1999 accident. Additionally, given the contradictory medical opinions regarding causation, the commission was free to credit claimant's testimony that his disability arose from the 1999 accident. Id. at 176, 468 S.E.2d at 154 (citing Morris, 3 Va. App. at 281, 348 S.E.2d at 878).

As there is credible evidence in the record to support the commission's finding of causation, we do not disturb the commission's finding on review. See Lillard, 15 Va. App. at 430, 424 S.E.2d at 246.

### B. Award of permanent total disability benefits

The commission found that claimant had permanent impairment in both legs and that he was unable to use his legs in gainful employment. On appeal, employer argues that the commission erred in awarding claimant permanent total disability based on claimant's inability to use his legs to any substantial degree. Employer argues that the evidence failed to show that

claimant cannot use his legs for *any* employment; rather, it only showed that he was unable to return to his previous employment.

> Code § 65.2-503 of the Virginia Workers' Compensation Act generally deals with compensation for permanent loss. It provides that compensation shall be awarded pursuant to Code § 65.2-500 for permanent and total incapacity when there is: "Loss of both hands, both arms, both feet, both legs, both eyes, or any two thereof in the same accident . . . ." [Code] § 65.2-503(C)(1). The statute further provides that: "In construing this section, the permanent loss of the use of a member shall be equivalent to the loss of such member . . . ." [Code] § 65.2-503(D).

Georgia-Pacific Corp. v. Dancy, 255 Va. 248, 249, 497 S.E.2d 133, 133 (1998). Whether a claimant is able to use his legs for the purpose of gainful employment is a question of fact that is "'binding on this court if [it is] supported by credible evidence.'" Georgia-Pacific Corp. v. Dancy, 24 Va. App. 430, 437, 482 S.E.2d 867, 871 (1997) (quoting Pantry Pride-Food Fair Stores, Inc. v. Backus, 18 Va. App. 176, 180, 442 S.E.2d 699, 702 (1994)), aff'd, 255 Va. 248, 497 S.E.2d 133 (1998).

In the instant case, there was credible evidence that claimant's leg injuries rendered his legs unusable for any gainful employment. Dr. Sinsabaugh opined that claimant was unable to consistently perform the activities that were required by even sedentary employment. As the commission's conclusion that claimant could not use his legs in gainful employment is supported by credible evidence, this finding of fact is conclusive and binding, despite the fact that contrary evidence exists in the record. Lillard, 15 Va. App. at 430, 424 S.E.2d at 246 (citing Brooks, 12 Va. App. at 894, 407 S.E.2d at 35).

### III. CONCLUSION

For the foregoing reasons, we affirm the commission's decision.

Affirmed.