COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Haley and Senior Judge Bumgardner
Argued at Alexandria, Virginia


SHERWIN WILLIAMS COMPANY

MEMORANDUM OPINION[*] BY
v.        Record No. 2156-05-4          JUDGE RUDOLPH BUMGARDNER, III
                                                       APRIL 25, 2006
JASON M. ENGLAND


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Lauren Piana (Lynn McHale Fitzpatrick; Franklin & Prokopik, P.C.,
            on brief), for appellant.

            Andrew S. Kasmer for appellee.


        Sherwin Williams Company appeals the denial of its applications to suspend the benefits

of Jason M. England because he obstructed independent medical examinations.  We hold the

worker did obstruct his examination without justification, and we reverse.

        The worker suffered a compensable injury in September 2000.  Karen Shoemaker, a

registered nurse assigned to manage the case for the carrier, arranged for an independent medical

examination with Dr. Stephen S. Hughes.  The worker appeared for the appointment on May 3,

2004, but he refused to complete a six-page form provided by the doctor's clinic.

        The orthopedic clinic gave the form to each person it saw.  The doctors at the clinic

required the patient to complete the form.  The first four pages asked for basic medical history.

The fifth page, "Patient Registration Form," requested identifying information such as the

address, employer, referring doctor, and insurance carrier.  The sixth page, "Authorization to Pay

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Benefits And Release Medical Information To The Anderson Clinic, Inc.," included a statement that the patient would be liable for any outstanding balance due.

Shoemaker completed the insurance portion of the form, but the examination did not go forward because the worker would not complete the medical history portions in the absence of his attorney. Shoemaker called the attorney in an attempt to facilitate completion of the form. The worker spoke with his attorney's office, but he still did not complete the form, and the examination did not proceed.

Shoemaker rescheduled the examination for May 26, 2004. She sent a copy of the clinic's form to the worker's attorney to review before the appointment and a request that the attorney advise her of any concerns about the form. Neither the attorney nor the worker advised her of any concerns.

The worker appeared for the appointment but brought only the first two pages of the form, and those were only partially completed. The worker wrote his name, the date, the date of his injury, his age, and checked a description of his usual type of work. Other entries were not in the worker's handwriting. One responded to a question to classify the injury, "ask defense counsel for copy of discovery or ask claimant to describe injury . . . ." Another responded "see pleadings" to questions about the length of time out of work, prior accidents, and prior workers' compensation claims. When the worker obtained the two pages from his attorney's office, they contained the entries that the worker did not write.

The worker told the clinic's nurse, "you can ask me anything you'd like on here and I'll answer it. But I just would not fill it out." The worker understood how to complete the forms, did not object to them being too personal, and stated he would answer all the questions orally. His attorney advised him not to complete the form. The second examination did not proceed.

The deputy commissioner found the worker was required to complete all portions of the form except for the acknowledgement of liability for any balances on the account.[1] The deputy commissioner found the medical form was a valid part of an employer's medical evaluation and refusal to complete it was tantamount to refusing to undergo the examination. The deputy commissioner further found the worker was not justified in refusing to complete the form and thus obstructed the examination.

The worker appealed the suspension of benefits to the full commission. After a review on the record, a majority of the commission reversed the deputy commissioner's decision and reinstated benefits. The commission found the worker improperly refused to complete the medical history portion of the form. It firmly admonished:

> [W]e do not condone the claimant's conduct. A refusal to provide written answers, while asserting a willingness to verbally answer any questions, evinces dilatory and possible obstructionist behavior. Doctor's offices have processes and procedures in place to facilitate efficient patient visits and examinations. If the claimant did not object to the questions, he should have answered them within the system created by the doctor's office. We note that providing verbal answers to the questions, rather than writing his answers in his own hand, creates more opportunity for miscommunication and incorrect documentation of his responses. Additionally, the chart on page four of the intake forms asked the claimant to mark areas where he felt pain or tingling sensations. Contrary to his testimony, assessing pain and lack of sensation is relevant to an IME.

However, the majority ruled the employer failed to carry its burden to prove that the examination was cancelled because the worker did not complete the medical portion of the form.

---

[1] The questions are Dr. Hughes's way of obtaining an accurate history from the claimant. The answers should be given in the claimant's own handwriting so that Dr. Hughes can ascertain how the claimant, and not his attorney, perceives his physical condition and medical history. Dr. Hughes needs to know what treatment and therapy the claimant has received since his accident, and the doctor needs to assess any differences that may exist between subjective and objective findings.

It concluded, "Based on the evidence, we are not able to ascertain exactly why Dr. Hughes refused to examine the claimant."

Under Code § 65.2-607,[2] if a claimant in "any way obstructs" an independent medical examination, his benefits must be suspended unless the commission finds the circumstances justified that obstruction.

The worker was not required to execute that part of the form that made him liable to pay for the examination, and it was reasonable for the worker to request that his attorney review the form before completing it. However, the worker never raised any objections after being provided the opportunity to review the form with his attorney. Instead, the worker appeared with two out of the six pages partially completed. He refused to answer the medical questions in writing but offered no real reason for refusing and was willing to provide the requested information orally.

While the majority is correct that "no representative from the doctor's office testified as to why the examinations did not go forward," the record clearly established why the examinations did not proceed. The worker conceded the first examination was terminated

---

[2] Code § 65.2-607 provides in its pertinent part:

> A. After an injury and so long as he claims compensation, the employee, if so requested by his employer or ordered by the Commission, shall submit himself to examination, at reasonable times and places, by a duly qualified physician or surgeon designated and paid by the employer or the Commission . . . .
>
> B. If the employee refuses to submit himself to or in any way obstructs such examination requested by and provided for by the employer, his right to compensation and his right to take or prosecute any proceedings under this title shall be suspended until such refusal or objection ceases and no compensation shall at any time be payable for the period of suspension unless in the opinion of the Commission the circumstances justify the refusal or obstruction.

because "he did not fill out the paperwork." Shoemaker testified that she understood the examinations did not go forward because the worker would not complete the forms.

The record contains[3] a report from Dr. Hughes explaining that the first appointment was cancelled because the worker would not complete the paperwork. The doctor gave the worker the second appointment when he was informed the worker would complete the paperwork. However, when the worker arrived for the second appointment some of the requested information was completed by his attorney and referred the doctor to discovery, pleadings, or the patient. The doctor explained that the patient personally needed to respond to the questions, but the worker refused to do so. The appointment was then cancelled.

The record establishes the first appointment did not proceed because the worker refused to provide the data requested. The information sought was routine medical history reasonable and necessary for the doctor to conduct an examination. The worker knew why the first examination did not proceed. When he refused a second time to provide that information, he knew or should have known the examination would not proceed. As he stated to the deputy commissioner and maintained on this appeal, "Failure to complete their requested paperwork does not constitute either a refusal or an obstruction of the examination."

The worker maintained that he was only required to present himself for the examination and was not required to complete any of the forms submitted. While the worker was justified in

[3] The May 26, 2004 memorandum signed by "Carol Dodson, LPN for Steven S. Hughes, M.D." was attached as an exhibit to the employer's application and was designated as a medical record submitted under Rule 2.2(B)(3). Though the worker objected to the memorandum at the hearing before the deputy commissioner, the objection was never sustained. Rather, the deputy commissioner reserved ruling upon the admissibility of the memorandum. The deputy commissioner's opinion referred to the Rule 2.2 submissions when listing the evidence submitted. On review before the full commission, the worker did not challenge the deputy commissioner's designation of the documents submitted under Rule 2.2(B)(3) as part of the evidence of record. Therefore, the worker waived any objection he might have had to the commission's consideration of the memorandum.

- 5 -

not completing the part of the form that obligated him to pay for any balance due, that did not justify his refusal to complete the medical history portion. The fact that he was justified in not completing one portion of the form does not mean he was justified in not completing the others. Justification for one obstruction does not provide justification for other obstructions.

The evidence only permits a finding that the independent medical examination did not proceed because the worker would not complete the medical history portion of the clinic's form. That portion of the form consisted of four pages seeking general background information about the worker's injury and his medical history. It was reasonable to have the worker provide the highly relevant information. The evidence and the reasonable inferences arising from it only permit a finding that the examination by Dr. Hughes did not proceed because the worker refused to complete the forms the doctor required for the examination.

The worker's refusal to provide complete, written responses to the questions contained on pages one through four of the paperwork prevented the examination. His refusal was not justified by his justified refusal to complete page six. Accordingly, we hold that employer proved the worker obstructed the May 26, 2004 medical examination with Dr. Hughes. Because the evidence does not permit a finding that the obstruction was justified, we reverse.

<u>Reversed.</u>

Benton, J., dissenting.

This proceeding arose upon the employer's application to terminate England's compensation award on the ground of change in condition. The rule is well established that "the burden is on the party alleging such change to prove his allegations by a preponderance of the evidence." Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 438-39, 339 S.E.2d 570, 572 (1986). The commission found that the employer did not meet its burden of proof.

Pertinent to our review of the commission's decision is the following provision in Code § 65.2-607, which was the basis for the employer's application:

> If the employee refuses to submit himself to or in any way obstructs such examination requested by and provided for by the employer, his right to compensation and his right to take or prosecute any proceedings under this title shall be suspended until such refusal or objection ceases and no compensation shall at any time be payable for the period of suspension *unless in the opinion of the Commission the circumstances justify the refusal or obstruction*.

Code § 65.2-607(B) (emphasis added).

The commission's finding that the evidence established justification for the employee's conduct "is a factual determination" that the commission makes after taking into account "an objective view of all circumstances as they reasonably appeared to the [employee]." R.G. Moore Building Corp. v. Mullins, 10 Va. App. 211, 213, 390 S.E.2d 788, 789 (1990) (citing Code § 65.1-98 (now § 65.2-607)). As with all factual determinations, the "commission's factual findings on this issue are conclusive and binding on this Court if supported by credible evidence." Mullins, 10 Va. App. at 213, 390 S.E.2d at 789. As an appellate court "[w]e do not retry the facts before the Commission nor do we review the weight, preponderance of the evidence, or the credibility of witnesses." Caskey v. Dan River Mills, Inc., 225 Va. 405, 411, 302 S.E.2d 507, 510-11 (1983).

"Under our standard of review, when we consider an appeal from the commission's decision, we must view the evidence in the light most favorable to the party who prevailed before the commission." K&K Repairs & Const. v. Endicott, 47 Va. App. 1, 6-7, 622 S.E.2d 227, 229 (2005). The evidence in the record established, and the commission found, that a portion of the form England had been asked to complete before being examined by the doctor was inappropriate. The commission's findings include the following:

> The doctor's office also used an "Authorization to Pay Benefits and Release Medical Information" form. That form requested insurance information and indicated that [England] would be liable for the cost of the examination in the event that the workers' compensation insurer did not pay. [The nurse employed by the employer's insurer] was not sure whether he was instructed to complete and sign that form at both examinations. [England] mentioned that a portion of the paperwork addressed his liability for the cost of the visit, and he stated that he would not sign anything outside of the presence of his attorney. We find that he was not obligated to fill out and sign this form. It is an inappropriate form for a workers' compensation claimant attending an employer-requested medical examination. Furthermore, it is an inaccurate statement of his obligations, and he was under no duty to sign it.

The commission found that the employer, who had the burden of proof, failed to prove that England's refusal to assume liability for medical costs, which was inappropriately inserted on the form he refused to complete, was not the "cause of the examination not going forward." The record supports this finding.

The commission noted that England "conceded" that his refusal to complete the form was the reason for the cancellation. The nurse employed by the employer's insurer also had the "understanding" that this was the reason. That fact is neither disputed nor dispositive. The dispositive fact is whether England's refusal to complete the part of the form he was not obligated to complete was the basis or part of the basis for the doctor's refusal to examine England. The commission made specific factual findings on this issue:

In this case, no representative from the doctor's office testified as to why the examinations did not go forward. From this evidence, we cannot determine whether [England's] failure to provide responsive written answers to numerous questions in the first four pages of documents, or his proper refusal to provide insurance information and accept personal liability for the exam charges, occasioned the cancellation of the examinations. It is important to know whether the failure to fill out completely the paperwork prevented the examination, or whether the failure to assume financial responsibility was the determinative factor. As the employer has the burden of proof in this matter, we find that it failed to establish whether [England's] failure to fill out all, or part, of the paperwork prevented the examinations from going forward. If it were only his failure to fill out the part regarding financial responsibility, such conduct would not constitute unjustified refusal. However, if [England's] failure to provide the requested information on page four was a cause of the examinations not going forward, the result in this case likely would be different. Based on the evidence, we are not able to ascertain exactly why Dr. Hughes refused to examine [England].

In my view, the majority opinion usurps the commission's exclusive fact finding function when it attempts, as the decision of a reviewing court, to make up for the employer's deficiency in its proof. The nurse was not employed by the doctor who was to conduct the examination. It was not the nurse who refused to examine England. It was the doctor. The nurse, therefore, could not say, indeed she did not say, that England's refusal to complete the inappropriate part of the form (which unlawfully obligated England to assume financial responsibility for the examination) was not the cause for the doctor's refusal to examine England. Neither the nurse's testimony nor the doctor's report is germane to the foundational fact at issue in this case.

Contrary to our standards of review, the majority opinion makes the factual finding that "[t]he evidence only permits a finding that the independent medical examination did not proceed because the worker would not complete the medical history portion of the clinic's form." At its core, the majority opinion merely speculates about evidence that plainly was not put before the commission by the employer, the party who bore the burden of proof. Without any basis in fact, the majority opinion concludes that England's refusal to complete the medical authorization that

- 9 -

made him liable for the doctor's fees was not the cause of the doctor's refusal to examine England. Not only is this an impermissible second guessing of the weight the commission gave to the evidence, it is pure fact finding.

We do not redetermine on appeal the probative weight of the evidence.

> "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." "Matters of weight and preponderance of the evidence, and the resolution of conflicting inferences fairly deducible from the evidence, are within the prerogative of the commission, and are conclusive and binding on the Court of Appeals."

City of Richmond Fire Dep't v. Dean, 30 Va. App. 306, 311-12, 516 S.E.2d 709, 711-12 (1999) (citations omitted); see also Code § 65.2-706(A). The commission, as fact finder, found nothing in the doctor's report that touched upon the impact of England's refusal to supply an authorization that the doctor inappropriately sought. Indeed, the doctor's report does not address the issue of the improperly sought authorization. The majority opinion has inappropriately weighed the evidence and reached a different factual conclusion upon its view that other evidence, not in the record, was determinative. It is well established, however, that even when there is "contrary evidence . . . in the record [it] is of no consequence if credible evidence supports the commission's finding." Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991). Furthermore, even if we were authorized to conclude, as the majority opinion does, that the weight of the evidence favors a finding for the employer, we are not at liberty to conclude that the commission's finding to the contrary, which is supported by credible evidence, must be rejected. C.D.S. Services v. Petrock, 218 Va. 1064, 1070, 243 S.E.2d 236, 240 (1978). The commission found that the doctor's form required information that was inappropriate and that England was not required to complete the form. It further found that the employer did not prove his failure to supply this inappropriate authorization was not the basis

- 10 -

upon which the doctor refused to examine England. These findings are supported by credible evidence.

The commission, in its role as a fact finder, could properly conclude from the evidence in this record, that the cause of the doctor's refusal to examine England was just as likely because England did not complete the inappropriate authorization. "Where reasonable inferences may be drawn from the evidence in support of the commission's factual findings, they will not be disturbed by this Court on appeal." Hawks v. Henrico County Sch. Bd., 7 Va. App. 398, 404, 374 S.E.2d 695, 698 (1988). Likewise, "the Commission's conclusions upon conflicting inferences, legitimately drawn from proven facts, are equally binding on appeal." Watkins v. Halco Engineering, Inc., 225 Va. 97, 101, 300 S.E.2d 761, 763 (1983).

In summary, the commission found that England was justified in refusing to complete and sign the form making him conditionally liable for payment of the cost of examination. As the commission ruled, "it is an inaccurate statement of his obligations, and [England] was under no duty to sign it." The commission further found that "the employer [had] the burden of proof . . . [and] failed to establish whether [England's] failure to fill out all, or part, of the paperwork prevented the examination from going forward." Moreover, as the commission found, if the cause of the doctor's refusal to examine England was "his failure to fill out the part regarding financial responsibility, [England's] conduct would not constitute unjustified refusal."

On this record, we cannot say as a matter of law that the evidence proved the doctor did not refuse to examine England because England refused to accept responsibility to pay the doctor's costs of the examination. Consequently, the commission's factual findings and ruling that the employer did not meet its burden of proof are binding and conclusive upon us. Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

For these reasons, I would affirm the commission's finding.